## 58153. STINSON v. THE STATE.

CARLEY, Judge.

On May 4, 1977, an undercover agent working with the Muscogee County Sheriff's Department made contact with Wanda Carlson, a co-defendant in this case, concerning the purchase of one pound of marijuana and arranged to meet with her the next day in the parking lot of a designated fast food restaurant in Columbus. At the appointed time the undercover agent, Douglas Pugh, and a deputy sheriff, David Wright, met Ms. Carlson, who did not have the marijuana. She explained that she had tried to contact "the guy" who had it but had been unable to get in touch with him and that she would keep trying. On the morning of May 6 Ms. Carlson telephoned Pugh to tell him that she had made contact with "the guy with the pound" and would meet Pugh at the restaurant that afternoon as previously arranged. Pugh and Wright again met Ms. Carlson, who was driving the same automobile in which she was seen on the previous day. At this time the vehicle also contained a passenger, the appellant Stinson. Ms. Carlson left her car and walked to the agents' van. When she told them she had the marijuana and that it would cost $175, they asked to see it first. They walked over to her car and Ms. Carlson opened the door at the driver's side, lifted the back seat and pointed to a paper sack on the floorboard behind the driver's seat. Wright testified that he opened the bag, identified its contents as marijuana and then arrested both Ms. Carlson and Stinson. Upon searching them he found a small bag of marijuana in Ms. Carlson's pocketbook. No contraband was found on Stinson's person.

Ms. Carlson identified Stinson as "the guy" who owned the marijuana. She admitted that the marijuana was in her car but claimed that she got it from Stinson and they delivered it together. Stinson, however, testified that

he had gotten in the car with Ms. Carlson to go to a record store across town where record albums and tapes were cheaper; that he did not know why she stopped at the restaurant or why the agents approached her car; and that he knew of no reason why she would swear under oath that he owned the marijuana or why she would commit perjury. The court charged the jury on possession of marijuana with intent to distribute as to both defendants, and a verdict of guilty as to both was returned. In sentencing, the trial judge expressed the opinion that Ms. Carlson "at least got on the stand and was truthful" and "testified primarily not so much from the standpoint of assisting the State, except that she just felt that she should not take the blame for the entire incident that she was not totally responsible for"; and stated that he would "reward her for it" by sentencing her to two years and Stinson to four years in the penitentiary. Stinson appeals, enumerating eight errors.

1. The pivotal issue is encompassed in enumerations 4, 5 and 6 and involves questioning of Detective Wright by a juror. The appellant asserts that reversible error occurred during the presentation of the state's case when the trial court allowed a juror to ask an improper question and then compounded the error by interposing questions of its own which were prejudicial to the defense. A juror inquired "Could I ask one question?", the court replied "Yes, sir," and the following exchange ensued:

"A Juror: I should have asked it, I guess, before he left. The Court: We can call the witness back if its a proper question. A Juror: What I wanted to know is was any — when the front seat was lowered and you looked in the sack, of course, the passenger could look down in the floorboard and see what was there when the bag was opened was any — The Court: Suppose we call Mr. Wright back. [District Attorney]: Call Detective Wright back, please. A Juror: Get him to talk into the mike, too, please sir. Whereupon, Deputy Wright entered the courtroom. The Court: Mr. Wright, a juror has a question of you and I think it relates to what the person in the passenger side could have observed as you opened it in the back. Suppose you state your question. A Juror: My question was, when you lowered the driver's seat with the

sack sitting in the floorboard on the split car, you are sitting above the floorboard and, of course, naturally, as would be human nature, to look down, and when you opened the sack could you explain what reaction it was, as if the man knew it was there, or was it a surprise or what? Did you remember anything — The Court: Is your question was it in view if he had looked? A Juror: Was it in view and did he act as if he knew what was there or if it was a surprise or what? The Court: All right, sir. [Defense Counsel]: If it please the court, I certainly don't want to cut off a juror's question, but I believe there are certain rules, Your Honor, and I would have to ask that his opinion, Mr. Wright's opinion of what this man thought or did, I don't think would be admissible. I think he is entitled to say what my client did and describe how he looked to the juror but I would have to object to Mr. Wright being able to give his opinion as to Mr. Stinson's reaction. The Court: Yes, sir. Well, ladies and gentlemen of the jury, of course, the jurors — it's the discretion of the Court that they can ask questions, but they are subject to the same rules of evidence and objections as if an attorney had asked them. However, it's the Court's opinion, Mr. Elkins, that Mr. Wright can say whether the bag of marijuana, as he opened it, was in view — plain view of the person in the passenger side had he looked and what the passenger's reaction was at the time. So, if you can answer that, Mr. Wright. The Witness: Okay. Whenever he was sitting there he made no reaction whatsoever whenever we walked up to the car or when we pulled it out of the brown paper sack. He just more or less turned his head and looked and that was all the reaction he made. The Court: All right. What reaction was there at the time of the arrest, if any. The Witness: He never said a word. Mr. Elkins: We have to object to that, Your Honor. The Court: I asked what his reaction was and, of course, he has a right to remain silent and it should not be held against him. You ladies and gentlemen will not hold it against him, the fact that he made — didn't say anything, so to speak. We don't even know whether he was given an opportunity or not. All right, is there any other questions, ladies and gentlemen? A Juror: Could the bag in its position be seen from the passenger side without pulling the seat up? The

Witness: Are [you] saying without raising the front seat? The Court: You mean before they did whatever they did? A Juror: If he was a passenger, could he have seen that without any unnecessary looking back to the back to be able to see it? Was he in a position where the bag was, just from looking around, could he have seen it? The Witness: He might have. He might not have. I don't really know how to answer your question, sir. The Court: I believe, Mr. Crawford, there's been testimony that the seat was raised up somewhat and you are asking if the passenger — if a passenger had looked would it have been in his view prior to lifting up the seat. The Witness: My answer to that would be he would have to more or less raise up and look over the back seat. The Juror: That was my question. The Court: I don't think that's prejudicial. Now, is there any other questions from Detective Wright, ladies and gentlemen?"

In *Hall v. State,* 241 Ga. 252, 256 (4) (244 SE2d 833) (1978), defense counsel asked the trial judge to allow the jurors to question the defendant after he testified. Error was enumerated on the judge's refusal to exercise his discretion to inform the jurors of any right to do so. The Supreme Court held: "We have found no Georgia authority and conclude that jurors are not permitted during trial to interrogate witnesses. Contra, Green, Georgia Law of Evidence § 131." Since this statement is unequivocal, Georgia, as noted by Professor Agnor, "seems not to follow the general rule." Agnor's Ga. Evidence 8, § 4-5 (1978 Supp.).

We think *Hall* states the correct rule that a juror should not be permitted to examine a witness under any circumstances. However, even if a juror were allowed to question a witness, he would have no more right to ask an improper question than do the parties or their counsel. But from a practical standpoint the trial attorney is placed in an untenable position if he has to object to an improper question from a juror who, being a layman and unversed in the complexities and necessary technicalities of the rules of evidence, is likely to conclude that the objecting attorney is trying to hide something. Although an attorney may hesitate to object for fear of intimidating or offending the juror, at the same time it is his duty to

insure that his client receives a fair trial. See Annot., 31 ALR3d 868, 881 § 4 (b).

As can be seen from the transcript, this was clearly the situation in the instant case. First the trial judge stated that the juror could ask the witness a "proper" question. But the court allowed the juror to ask Detective Wright (1) to make an assumption or draw a conclusion as to what a passenger could or could not have seen in the bag on the floorboard from his position, and (2) to explain what reaction he had "as if the man knew it was there, or it was a surprise or what?" Appellant's objection was overruled and the witness' answer was non-commital and vague. Then, the circumstances were exacerbated by the reiteration of this line of questioning by the judge.

Even in those jurisdictions where it is proper to allow a juror to propound questions, the courts have held that "the privilege should be exercised with great care, under the strict supervision of the trial judge, as a dangerous practice and one not to be encouraged." 98 CJS 72, Witnesses, § 351. Thus, even if we agreed with the arguments of the state, which we do not, that *Hall v. State,* supra, merely upheld the discretion of the trial judge not to allow a juror to ask a question, the prejudicial error was manifest here. At the point in the trial that the juror-court questioning of Detective Wright occurred, the only fact the state had established as to the appellant's participation in the alleged criminal activity was that he was present at the scene of the crime. Although the court has the right, even the duty, to question witnesses, *Varnedoe v. State,* 75 Ga. 181 (1885), and may even ask leading questions, *Smith v. State,* 11 Ga. App. 89 (74 SE 711) (1912), the trial judge must not express or intimate his opinion in any way and it is difficult for the court to conduct extensive questioning of a witness without becoming an advocate. Code Ann. § 81-1104; *Ford v. State,* 2 Ga. App. 834 (59 SE 88) (1907). See generally Agnor's Ga. Evidence 8, § 4-5, supra. The violation of either the letter or spirit of Code Ann. § 81-1104 constitutes reversible error. See *Crawford v. State,* 139 Ga. App. 347, 348 (2) (228 SE2d 371) (1976) and cits.

The answers of Detective Wright were inadmissible conclusions and the court's ruling that this witness could

say whether the bag was in plain view of the appellant was thus in error. The court's attempted corrective instructions regarding the defendant's right to remain silent were insufficient to overcome the effect of the repeated eliciting of Detective Wright's opinion of the appellant's "reactions" at the time the bag was opened and at the time of arrest. The repetition of this line of questioning by the court served only to establish an inference from which the jury could assume that the judge thought the appellant was either involved in the crime or condoned the conduct of his co-defendant, Ms. Carlson. *Crawford v. State,* 139 Ga. App. 347 (2), supra.

2. We next consider the enumeration of error dealing with the sufficiency of admissible evidence to support appellant's conviction. Since we have ruled inadmissible in Division 1 Detective Wright's conclusions as to what the appellant could see when the concealed bag of marijuana was opened and what his reactions were when he "saw" it, the only direct evidence presented against the appellant, other than the testimony of Ms. Carlson that Stinson was "the guy" from whom she received the marijuana, was that he was in the car which contained marijuana concealed in a brown paper bag behind the driver's seat. However, the testimony of co-defendant Ms. Carlson shows that, at the very least, she was an accomplice in this case. Since, even under the state's theory, Stinson did not actually commit the crime, his guilt must be based upon the theory of conspiracy. "It is required for a conviction in a felony case that the testimony of an accomplice must be corroborated. Code § 38-121." *Caldwell v. State,* 227 Ga. 703, 706 (182 SE2d 789) (1971). Only after the fact of the conspiracy has been proven may the declarations by any one of the conspirators during the pendency of the criminal project be admissible against all. Code Ann. § 38-306.

Here the witness Pugh was allowed to testify over objection that Ms. Carlson had told him outside of the presence of appellant that she was to pick up the pound of marijuana from "some guy." Although the state asked for admission of these statements on the theory of conspiracy under Code Ann. § 38-306, at that point in the trial the prerequisite fact of conspiracy had not been proved.

Co-defendant Carlson's statements in her own defense that Stinson was "the guy" were not made until after these hearsay declarations had been admitted; and even so, "in order 'to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and, *independently* of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt.' [Cits.]" *Caldwell v. State,* supra.

Stinson's mere presence in the car was insufficient to constitute the commission of a crime, *Greeson v. State,* 138 Ga. App. 572, 574 (4) (226 SE2d 769) (1976), and "[m]ere association with those individuals engaged in the actual sale of [drugs] does not create an inference of guilt. [Cits.] Knowledge of the existence or acquiescence in a conspiracy does not serve to render one a part of the conspiracy. There must exist some element of affirmative cooperation or at least an agreement to cooperate. [Cits.]" United States v. Collins, 552 F2d 243, 245 (1-3) (8th Cir. 1977).

In Collins, the defendant secured the introduction of the agents to the person delivering the drugs, arranged and attended the meeting at which the sale took place and was affirmatively involved in the transaction itself. In the instant case, other than Ms. Carlson's testimony, there was no evidence of any agreement connecting the appellant with the crime or leading to the inference that he was guilty. Compare *Caldwell v. State,* 227 Ga. 703, supra. Thus there was no basis for the allowance in evidence of her testimony as an accomplice or her declarations to others outside of the presence of the appellant. *Pritchard v. State,* 224 Ga. 776 (1) (164 SE2d 808) (1968).

3. The fact that consideration of the inadmissible testimony of Wright, Pugh and Carlson was harmful to the appellant becomes manifest upon review of the following comments of the trial judge at the time of the denial of appellant's motion for directed verdict of acquittal: "I understand Mr. Pugh testified he stated that this lady stated to him and did in fact make efforts to talk

[to] a male whom she said had the marijuana. A male person showed up at the time. Mr. Wright has testified that as he was examining the marijuana in the back, that it was in plain view of the defendant, Stinson, and that obviously there was no reaction of surprise and so forth at the time of the arrest."

Since the judge considered inadmissible evidence and gave it probative value at the time of the motion for directed verdict, it is logical to assume that the jury did likewise. If this evidence is properly excluded from consideration, the only connection shown between the appellant and the contraband is spatial proximity, which does not, without more, establish possession. *Donaldson v. State,* 134 Ga. App. 755, 756 (216 SE2d 645) (1975) and cits. It may have raised a suspicion, "but a bare suspicion is not sufficient to establish a fact." *Curtis v. State,* 150 Ga. App. 507 (1979). There was thus a total failure to establish actual or constructive possession of the marijuana by Stinson and the trial court erred in denying his motion for directed verdict of acquittal. *Mitchell v. State,* 150 Ga. App. 44, 46 (2) (256 SE2d 652) (1979).

4. Having reached the above conclusion, it is unnecessary for us to decide whether the trial court erred in failing to charge, without request or objection, on the law of direct and circumstantial evidence.

*Judgment reversed. Deen, C. J., and Shulman, J., concur.*

SUBMITTED JULY 2, 1979 — DECIDED
SEPTEMBER 26, 1979.

*John C. Swearingen, Jr., Ben B. Philips,* for appellant.

*E. Mullins Whisnant, District Attorney,* for appellee.