## 38197. REED v. THE STATE.

GREGORY, Justice.

Appellant, Floyd William Reed, was convicted in Chattooga County of murdering his wife, Ruby Reed.

Appellant and the victim lived in a trailer several hundred feet from Peach Orchard Road in Chattooga County. Prior to the date of the offense, the couple had been separated for about three weeks. On the morning of October 16, 1980, appellant met Melvin Burrage, the husband of the victim's niece, Wanda Burrage. Mr. Burrage told appellant that Ruby wanted to see him. According to Mr. Burrage's testimony, "[Appellant] said that if Ruby wouldn't live with him, he wasn't going to do nothing for her . . . [H]e said, I love Ruby with all

my heart, but says, if I can't live with her, I'll kill her."

Appellant went to see the victim at her mother's house. He testified that a reconciliation took place. Later in the evening of the same day, appellant, the victim, and Mr. and Mrs. Burrage were all at the Reed's trailer, apparently to spend the night.

Around 10:30 p.m., while Mr. Burrage, who had been working on his truck, was taking a shower, appellant and the victim got in their car to leave. The victim, who was driving, told Mrs. Burrage that they were just going to the store to get something to make sandwiches. Mrs. Burrage watched from the porch as the car proceeded down the driveway. Almost 300 feet from the trailer the driveway turned 90° to the left. Just after the car reached this turn, Mrs. Burrage saw the car stop, back up, go forward, and then back up again. Mrs. Burrage assumed they had changed their minds about going to the store, and went inside the trailer. Five or ten minutes later, appellant returned to the trailer claiming he could not find Ruby and didn't know where she was. Appellant and the Burrages walked to the car, which was still at the curve in the driveway. The victim was not in the car nor could she be seen nearby in the darkness. The Burrages, thinking that the victim had perhaps become angry and had taken a walk to cool off, began walking toward the road.

Then, Mr. Burrage testified, "[we] heard Floyd crank the car up, and we seen him go into motion, trying to back up, and it wouldn't back up, and he gave it the gas. When it finally did back up, the back of the car raised up and fell down, and he did that twice; pulled up, backed up and started over the third time. That's when we got back to the car and stopped him." Mrs. Burrage discovered the victim lying behind the automobile. She appeared to be dead. Appellant went with the Burrages to a neighbor's house to call the police. Appellant told the Burrages it was an accident, that Ruby must have had a heart attack.

Dr. Larry Howard, who conducted the autopsy, found no evidence of a heart attack. The cause of death was a crushing injury to the chest. Dr. Howard noted abrasions on the victim's body that were obviously tire marks, and burns caused by an exhaust pipe. He concluded from his examination that Mrs. Reed had been run over at least twice before she died and at least once afterwards.

The evidence in this case meets the standard enunciated in Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "A review of the record in the light most favorable to the prosecution convinces us that a rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt . . ." 443 U. S. at 324.

(1) In his first enumeration of error, appellant contends the trial court erred in appointing the court reporter as interpreter.

Appellant suffers from a speech impediment which makes him difficult to understand. Appellant filed a motion requesting that appellant's sister be allowed to act as an interpreter during appellant's testimony. See Code Ann. § 38-1609.[1] The State objected that appellant's sister might not be an impartial interpreter. The trial court suggested using the court reporter as an interpreter. Appellant's counsel agreed that would be a "very good" way to handle the matter.

"The use of an interpreter, and the extent to which he may be used in the examination of a witness, must necessarily lie within the sound discretion of the trial judge. *Hensley v. State,* 228 Ga. 501 (186 SE2d 729) (1972)." *LaCount v. State,* 237 Ga. 181, 183 (227 SE2d 31) (1976). We find no abuse of discretion here especially in view of appellant's agreement to the procedure.

Appellant, however, contends the court reporter who reported his trial (not the one who had reported the hearing on his motion) was unable to act in the dual role of both court reporter and interpreter. The trial court instructed the jury that if anyone could not understand an answer, he should raise his hand. Despite these instructions, on two occasions a juror spoke up to indicate he could not understand an answer. Furthermore, on six occasions, a juror spoke up to interpret an answer of appellant's.

Appellant contends these actions by the jury resulting from the appointment of the court reporter as interpreter, amounted to jury participation in his trial of the type forbidden by *Stinson v. State,* 151 Ga. App. 533 (260 SE2d 407) (1979), and require reversal of his conviction. We disagree.

First, most of appellant's testimony needed no repeating,[2] and it is obvious that the jury was able to understand his testimony. Appellant was not, as he contends, deprived of his right to testify in his own behalf.

Secondly, *Stinson* involved jury interrogation of witnesses. See, also, *Hall v. State,* 241 Ga. 252 (4) (244 SE2d 833) (1978). The two jurors here who spoke up to say they couldn't understand an answer were not interrogating the witness, nor do the six instances of jury interpretation of appellant's testimony amount to jury interrogation. Those six jurors were not asking questions and eliciting answers from appellant; they were merely repeating an answer appellant had just

---

[1] "No physical defect in any of the senses shall incapacitate a witness. An interpreter may explain his evidence."

[2] During his testimony, appellant gave over 230 answers, of which 12 were repeated by the court reporter and 6 were repeated by jurors.

given. Appellant does not now contend he was interpreted incorrectly, and in four of the six instances, appellant immediately agreed with the juror's interpretation. While the trial court might, as a better practice, have instructed the jury to let the court reporter supply the interpretations of appellant's answers, in view of appellant's failure at any time during the trial to object to the practice now complained of, we find no reversible error.

(2) Appellant also contends in his first enumeration of error that the trial court erred in failing to administer an oath to the court reporter prior to appellant's testimony. Since appellant failed to make a timely objection to the lack of an oath and since appellant shows no resulting harm from this failure, we need not consider this contention further. *Rhodes v. State,* 122 Ga. 568 (50 SE 361) (1905).

(3) In his second enumeration of error, appellant complains that the trial court erred in failing to conduct an in-camera inspection. Appellant filed a four-page pre-trial "Motion for Discovery and to Compel Disclosure and Request for Documents" containing sixteen broad requests to disclose information and produce documents. His final request was for anything that might be exculpatory within the meaning of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). At the hearing on appellant's motion, the State provided appellant with the specifically requested documents which did exist and offered to let appellant examine the State's files. Appellant then argued, as he argues here on appeal, that he believed an examination of the prosecuting attorney's files would be unproductive since it usually contains little material or potentially exculpatory information, whereas the prosecuting officer's file contains all the witnesses' statements and other material evidence which has been gathered in investigating the case and preparing for trial which could be exculpatory. Appellant requested an in-camera inspection of the State's files which the trial judge denied.

In *Tribble v. State,* 248 Ga. 274 (1) (280 SE2d 352) (1981), we held that a "trial court is not required to conduct an in camera inspection of the State's file in connection with a 'general' Brady motion unless, after the state has made its response to the motion, the defense makes a request for such an inspection." We did not explain what impact an offer by the prosecution to open its files to the defendant would have upon such a request. We did, however, in Division 2 of that opinion, explain that when faced with a "specific" Brady motion, a prosecutor could properly respond either by furnishing the information or by submitting the problem to the trial judge. 248 Ga. at 276. Consistent with that reasoning, we now hold that the State may, if it chooses, avoid the necessity of such an in-camera inspection, where it is required following a "general"

Brady motion, by opening the State's files to the defendant. We stress, however, that this is merely an option available to the State, and that there is no requirement that a prosecuting attorney must open his files to a defendant. See, *Henderson v. State,* 227 Ga. 68 (179 SE2d 76) (1970).

In any event, this appellant has not met his burden of showing how his case has been materially prejudiced by the failure of the trial court to make an in-camera inspection. *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30) (1974). We adhere to this rule. Here, as in the case of *Hill v. State,* 248 Ga. 304, 305 (283 SE2d 252) (1981), the "appellant has not come forward with anything to suggest a suppression of material, exculpatory information by the state. The burden is on the appellant to establish a Brady violation; . . . and this burden has not been satisfied in the instant case." In this case, the defendant alleges that a review of the prosecuting attorney's file would have been meaningless because it probably contained nothing more than the indictment, whereas the real State's file was retained by the prosecuting officer. There is no evidence in the record, however, other than the assertions of appellant's counsel to suggest that this was the case. Had this defendant accepted the prosecution's offer to review its files and then showed the trial court on the record that this offer was a meaningless gesture because it was a bare file, a different case would have been presented. This defendant has made no evidential showing that the prosecuting attorney failed to offer a complete file for review. For the foregoing reasons, this enumeration of error is without merit.

(4) Appellant contends the trial court erred in permitting a witness "to testify to hearsay with the victim." The following transpired below:

Question (by the D. A.): Do you know when she (the victim) got separated?

Answer: All I can say is what she told me.

Question: All right, without going into that, do you know?

Answer: I had been with her three or four days and she wasn't with him then.

At this point, appellant objected on hearsay grounds. It is obvious that no hearsay was elicited. See Code Ann. § 38-301; McCormick on Evidence (2nd Ed. 1972), § 246.[3] This enumeration of error is meritless.

---

[3] McCormick offers this definition of hearsay: "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." Ibid., p. 584.

(5) Appellant contends the trial court erred in permitting Mr. Burrage to testify as to his fear of appellant. Appellant contends that a proper foundation was a prerequisite to the admissibility of evidence of Mr. Burrage's state of mind.

Initially, we note that this testimony was relevant to explain why Mr. Burrage, immediately after the victim's body was discovered, agreed with appellant's statements that it was an accident and the victim probably had a heart attack. Secondly, we know of no requirement that a foundation be laid before admitting testimony by a witness as to his *own* state of mind, nor has appellant cited us any authority for such a requirement. Cf. *Alexander v. State,* 118 Ga. 26 (4) (44 SE 851) (1903). Finally, appellant's only objection to the testimony was, "Object to that, he's trying to get in the back door now." Therefore, this enumeration of error is meritless.

(6) In his fifth enumeration of error, appellant contends the trial court erred in refusing to accept a stipulation as to certain evidence. During Dr. Howard's testimony the State offered into evidence the clothing worn by the victim. When the clothing was exhibited, two spectators, apparently related to the victim, burst into tears. The court sent the jury to the jury room and appellant attempted to stipulate certain facts about the victim's death to prevent further exhibition of the clothing. It is clear from the record that the parties were unable to reach an agreement as to what might be stipulated and the trial court did not err in refusing to accept the stipulation. Cf. *Franklin v. State,* 245 Ga. 141 (6) (263 SE2d 666) (1980)

(7) When the jury returned the trial court instructed the jury to "totally disregard any sounds or any physical expressions by anyone in the courtroom just prior to your retiring to the jury room. It has nothing to do with this case." Under the facts of this case the court did not abuse its discretion denying appellant's motion for a mistrial. *Messer v. State,* 247 Ga. 316 (6) (276 SE2d 15) (1981).

(8) In his last enumeration of error appellant contends the trial court erred in not granting a mistrial after the assistant district attorney, in his closing argument, alluded to the indictment as evidence of guilt.

That portion of the argument objected to began:

"Ladies and gentlemen, Mr. Westbrook in his argument said that the State has to go with what we have got, but he neglected one thing, ladies and gentlemen, in the Superior Court of said county, how many times did we hear this, what comes next, the grand jurors selected, chosen and sworn for said county, to-wit, William Blackwell, foreman, in the name and behalf of the citizens of Georgia . . ."

At this point, appellant interposed an objection that it was highly improper to argue what a grand jury has done in a case. The court agreed and "admonish[ed] counsel for the State for making such an argument."

Appellant relies on *DeNamur v. State,* 156 Ga. App. 270 (274 SE2d 673) (1980) to contend that reversible error was committed. We disagree. In *DeNamur,* the prosecutor argued "[w]ho wants to prosecute innocent people? What pleasure does the Grand Jury get out of indicting these people?" The Court of Appeals found that such an argument could only be interpreted as an argument to the jury that an indictment can in reality be considered as evidence of guilt and found the court's instructions to be inadequate to remedy the error.

It is not error to read from the indictment in order to explain the charges against a defendant and what must be proved beyond a reasonable doubt. *Crawford v. State,* 144 Ga. App. 622 (241 SE2d 492) (1978). The prosecutor in this case did no more than that. We find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 17, 1982.

*Westbrook & Vines, William Jerry Westbrook,* for appellant. *D. L. Lomenick, District Attorney, Ralph L. Van Pelt, Jr., Michael J. Bowers, Attorney General, George M. Weaver, Staff Assistant Attorney General,* for appellee.