## 69025. ANGLIN v. THE STATE.
(327 SE2d 776)

Beasley, Judge.

Defendant appeals his conviction of four counts of child molestation, three counts of sodomy and two counts of statutory rape involving four girls aged 11 and 12, one of whom was his daughter. *Held*:

1. We find the evidence sufficient to meet the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant had been indicted on November 2, 1982. About a week before trial, defendant filed a *Brady* motion (*Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)) for discovery which was acted upon by a judge who reviewed the State's file. He found nothing exculpatory except possibly a case report which was ordered to be given to the defense. The motion had included a request for copies of tape recordings and any transcripts thereof "in the control of the prosecution pertinent to the subject matter of the case." As it turned out, tape recordings of the victims' statements were in the possession of a deputy sheriff, and a few days before trial, defendant served a subpoena on the deputy, compelling him to bring tapes of conversations by anyone with seven named females. He also served a similarly worded notice to produce on the district attorney, with no mention that this was pursuant to any *Brady* rights.[1]

At the start of the trial the defense moved for a continuance on the grounds that they were unable to properly prepare for trial because they were denied the opportunity of calling the four victims at

---

[1] Although appellant argues that there was also a subpoena to another person, allegedly from the Rape Crisis Center, for the same tapes, it is not in the record and will not be considered.

the preliminary hearing, were unable to obtain the permission of their parents to interview and question them, and were unable to obtain tape recordings made of interviews of the victims and had served a notice to produce on the district attorney and a subpoena for their production upon the deputy sheriff who had them in his possession. The purpose of seeking the tapes, counsel said, was to use them in lieu of interviews and to determine if they could be used to impeach the victims' testimony at trial. His motion for continuance was apparently sought with the thought that when the tapes were produced pursuant to notice and/or subpoena or court order based on them, and finally turned over to defendant, he would then listen to them in further preparation for trial.

As a basis for his right to them, he stated that he thought he might be able "to possibly develop impeaching material on those witnesses and possibly to preserve favorable testimony," relying on *Tarpkin v. State*, 236 Ga. 67 (222 SE2d 364) (1976). As to whether they contained anything materially favorable to defendant, counsel stated: "We do have some indications that at least one of the alleged victims has made statements that another State's witness indicated in his opinion were not truthful, and that statement was to the effect that another man had — had relations with her, and that in his opinion she was not telling the truth when she said that. We don't know if there are other statements of that nature in there that might provide impeachment material, or not . . . We have had indications that there were — that we would be able to develop prior inconsistent statements from this material." However, in his brief on appeal, defendant says the opposite, that the victim's statement on tape would impeach another State's witness at trial.

The court declined to order production, denied the motion for continuance, and quashed the subpoena. Defendant did not ask for the tapes after the witnesses testified or at the close of the State's evidence. He would not have been entitled to them then either, if his only basis has been as stated at the outset of the trial. *Gilreath v. State*, 247 Ga. 814, 828 (279 SE2d 650) (1981). The denial of the continuance and the quashing of the subpoena are alleged as error in two connected enumerations. The motion to produce the tapes was denied on the ground that the State did not have possession of them, *Young v. State*, 146 Ga. App. 167, 168 (2) (245 SE2d 866) (1978), but that denial is not enumerated as error.

Treating these tape recordings as statements of witnesses, " 'Georgia law does not provide that the statements of witnesses be generally available for discovery by the defendant in a criminal case.' [Cit.]" *Harvey v. State*, 165 Ga. App. 7 (8), 10 (299 SE2d 61) (1983). However, *Brady v. Maryland*, 373 U. S. 83, supra, held that "the suppression by the prosecution of evidence favorable to an accused upon

request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U. S. at 87. See *Payne v. State*, 233 Ga. 294, 296-297 (210 SE2d 775) (1974).

The State must produce obviously exculpatory material even if it is not requested. *Tribble v. State*, 248 Ga. 274, 275 (280 SE2d 352) (1981). This, of course, relates to matters in its file.

Moreover, a motion to produce is unrelated to disclosure of exculpatory materials pursuant to *Brady*. It cannot be used to examine the district attorney's file before trial. Exculpatory witness statements would be subject to disclosure under *Brady*, not pursuant to a notice to produce. *Wilson v. State*, 246 Ga. 62, 64 (1) (268 SE2d 895) (1980).

If a defendant does not get what he thinks is exculpatory in the State's file, he may seek an in-camera inspection of that material, which he did not do here. *Wilson*, supra. Of course, in this instance, the district attorney did not have possession of the tapes and, what is more important, the inspection would not reveal what defendant contends to be the exculpatory nature of them. According to defendant's position, the tapes would be inculpatory but might contain a statement by one of the witnesses involving acts not related to this defendant but possibly useful for impeachment. Thus, a court inspection was not called for, even if it were agreed that possession by the deputy sheriff brought the tapes within the State's file.

Defendant would have to show the materiality first, because if what he was contending was true, only evidence outside of the State's file or beyond the tapes would even tend to show they were exculpatory in the sense of being impeachment material. He was contending that someone else would say the statements made by one of the witnesses on tape, was false (although the opposite is stated in his brief on appeal).

Defendant did not show in any way, such as by an affidavit of the unnamed male witness who had allegedly given contrary information, or by having that witness in court to impeach the allegedly lying witness. He must establish his right to the evidence and he failed to do so by showing concretely that he had a witness who would contradict, by way of testimony, the victim/witness' earlier out-of-court statement.

A defendant bears the burden of showing prejudice to his case, resulting from the prosecution's refusal to turn over evidence. *Tribble v. State*, 248 Ga. 274, 275, supra. See also *Reed v. State*, 249 Ga. 52, 56 (287 SE2d 205) (1982). There must be "a substantial basis for claiming materiality." *Tribble*, supra at 276. He must make some "evidential showing." *Reed*, supra at 56. He must show that the denial of the motion to produce (or subpoena) prejudiced his defense. *McGuire v. State*, 238 Ga. 247, 248 (232 SE2d 243) (1977). He has the burden

of showing how his case has been materially prejudiced by the non-disclosure of the evidence sought. *Tarpkin v. State*, 236 Ga. 67, 68-69, supra.

Since he had no right to peruse the State's file personally, *Payne v. State*, 233 Ga. 294, 297, supra, even assuming the deputy's possession was the State's, and absent a showing of the nonproduction of anything materially exculpatory under *Brady*, there was no error in the quashing of the subpoena and no abuse of discretion in the denial of a continuance.

"Nor did the court's refusal to command discovery under subpoena constitute error. A subpoena is a writ or a process, designed to implement rather than confer substantive rights. Where, as here, its intended use was to obtain the . . . discovery . . . sought in appellants' notices to produce, the court properly denied its enforcement. [Cit.]" *Jones v. State*, 135 Ga. App. 893 (1), 895-896 (219 SE2d 585) (1975). Since defendant had no right to the tapes under *Brady*, and since he had no additional right to them enforceable by subpoena, the subpoena was properly quashed.

"The granting of a motion for continuance is within the sound discretion of the trial judge, and absent a clear showing of abuse, this court will not reverse for refusing to grant a continuance. [Cit.]" *Buckler v. State*, 165 Ga. App. 550 (2), 551 (302 SE2d 123) (1983).

A continuance would have served no valid purpose, because defendant was not entitled to then review the tapes pursuant to his motion to produce or subpoena duces tecum.

3. It is contended that the trial court erred in permitting the prosecution to ask numerous leading questions of its witnesses, particularly of the four young victims.

" ' "The court may, in the exercise of its discretion, permit a party calling a witness to propound leading questions." [Cit.]' [Cit.] ' "A judge is given latitude and discretion in permitting leading questions, and unless there has been an abuse thereof, resulting in prejudice and injury, there is no reversible error. [Cits.]" ' " *Hamby v. State*, 158 Ga. App. 265 (1) (279 SE2d 715) (1981).

" 'Whether counsel will be permitted to propound leading questions to a boy "of immature years," while testifying, is a matter which addresses itself to the sound discretion of the court; and the allowance of such questions will not be held erroneous unless the discretion is abused.' [Cits.]" *Daniels v. State*, 230 Ga. 126 (6), 128 (195 SE2d 900) (1973).

We find no abuse of discretion and therefore no merit in this contention.

4. As there was no objection to the trial court's failure to qualify the four victims as to competency, "no issue regarding the witness' competency is properly before this court. [Cits.]" *Keasler v. State*,

165 Ga. App. 561 (1) (301 SE2d 915) (1983).

5. Error is enumerated that the trial court made comments on the evidence in violation of OCGA § 17-8-55. No motion for mistrial or objection to such comments were made.

" 'The question of whether Code Ann. § 81-1104 [now OCGA § 17-8-55] has been violated is not reached unless an objection or motion for mistrial is made.' Therefore, this enumeration of error is without merit." *Driggers v. State*, 244 Ga. 160 (2), 162 (259 SE2d 133) (1979).

6. The State presented evidence that defendant had been convicted for molesting two young boys in 1979, and testimony of some of the victims in the case being tried was that defendant had given them beer and liquor. Defendant asserts that the admission of such evidence was error as being unrelated, dissimilar offenses. We find no error.

The evidence of providing intoxicants to the victims was not objected to at trial and will not be considered for error on appeal.

As to the evidence of prior child molestations, "[i]n child molestation cases evidence of other similar or connected sexual offenses against children is admissible to corroborate the testimony of the victim as well as to show the lustful disposition of the defendant. [Cits.]" *Ballweg v. State*, 158 Ga. App. 576 (2), 577 (281 SE2d 319) (1981).

*Judgment affirmed. Birdsong, P. J., and Carley, J., concur.*

DECIDED MARCH 5, 1985 — 

*Stephen M. Friedberg, Michael R. Hurst*, for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, J. David Fowler, Assistant District Attorneys*, for appellee.