**STATE of Missouri, Plaintiff-Respondent,**

v.

**Charles TAYLOR, Defendant-Appellant.**

**No. 14795.**

Missouri Court of Appeals, Southern District, Division Two.

July 24, 1987.

Motion for Rehearing and Transfer Denied and Overruled Aug. 7, 1987.

Application to Transfer Denied Sept. 15, 1987.

Nancy A. McKerrow, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

The defendant was charged with having deviate sexual intercourse with A.W., to whom he was not married and who was less than 14 years of age. § 566.060. The information also alleged the defendant was a persistent sexual offender within the meaning of § 558.018 in that on October 8, 1982, the defendant pleaded guilty to the felony of sodomy. A jury found him guilty of the instant charge. The trial court found the defendant was a persistent sexual offender and sentenced him to imprisonment for 50 years without probation or parole. The defendant presents six points on appeal.

The defendant does not question the sufficiency of the evidence. Considering the evidence in the light of the verdict, *State v. Cooper*, 673 S.W.2d 848 (Mo.App.1984), the following is a summary of that part of the evidence necessary for consideration of those points.

The victim A.W. was the defendant's stepdaughter. She was born August 13, 1973. Her mother was divorced from the victim's father. The mother subsequently married the defendant. She and defendant were the parents of a daughter who was

approximately three years old at the time in question. During this period, January to June, 1985, the victim and her mother and half sister lived in an apartment in Joplin.

On October 8, 1982, the defendant entered a plea of guilty to the felony of having committed sodomy upon A.W. He was sentenced to imprisonment for five years. He was released on parole in late 1984. He returned to Joplin where he lived with his parents. As a condition of his parole, he was obligated to visit in his wife's home only in the evenings on Monday, Wednesday and Sunday and not when the children were alone.

The testimony of A.W. was to the following effect. After his release from prison, the defendant was in the apartment much of the time. This was true both in the daytime and in the evening. Many times when the defendant was there her mother would leave. In January, 1985, the defendant started abusing her. He took her into his bedroom. He showed her "dirty" movies on the VCR. He showed her books depicting among other things sexual intercourse. He fondled her genitals and performed cunnilingus upon her. This occurred two or three times a week.

A.W. also testified that the defendant molested her several times in 1981. Then he did the same things he did in 1985. In addition, in 1981 he had her perform fellatio upon him and pose for nude pictures. He took one picture of her performing fellatio. They looked at the pictures together. She identified the pictures. The trial court excluded them from evidence. In 1982, the defendant went to prison. For a time A.W. was in a foster home.

In 1985, the defendant warned her not to tell of his sexual activities. He would go to prison and she would be put in a foster home. She was frightened of being in a foster home again. She did not tell of those activities for several months. In June, 1985, a juvenile officer took A.W. to the police station. There she first told police officer Vickie Myers of the defendant's sexual activities. At the trial, A.W. identified and read to herself a report of the interview prepared by the officer. The victim said everything in the report was true.

For a reason not in the record, the victim's mother arranged for a daily "baby sitter" starting in May, 1985. The baby sitter was a girl 14 years of age. The state presented the testimony of the baby sitter which may be summarized as follows. She first went to the apartment on Thursday, May 30. The defendant was there. The mother was not. The baby sitter waited 10 to 15 minutes. After the mother did not return, the baby sitter left. On Friday when the baby sitter reported for work in the morning, the mother and the defendant were there. The mother left and the defendant stayed. On the following Monday, the mother went to work and the defendant was there all day. The same was true on Tuesday and on Wednesday. Wednesday was the last day the baby sitter worked.

The defendant testified. On direct examination, he admitted he was convicted of sodomy upon A.W. in 1982. Apparently to establish extenuating circumstances, he recited the pressures of his employment, a diagnosis that his wife was suffering from a brain tumor and his excessive drinking. He also admitted that he was found guilty by a judge of a sexual offense in 1985. He said in his own mind he was not guilty. He later testified he did not perform those acts. He stated that after his release from prison, his greatest desire was to reunite the family. He denied the instant charges. He stated that he had no sexual desire for A.W. He thought of her as his own daughter.

On cross-examination, the state elicited the details of the offense committed in 1981. Cross-examination also developed the following. The defendant rented x-rated movies every other week in 1985 to view on his VCR. He had in his bedroom in the apartment the books "The Joy of Sex"; "The Art of Massage"; "The Sex Book, A Modern Pictorial Encyclopedia"; and "Sex, The Facts, The Acts and Your Feelings." He acknowledged that he violated the conditions of his parole by being in the home at unauthorized times and by being alone with the children. He also acknowledged

that in November of 1985, following a trial, he was found guilty of deviate sexual intercourse upon the baby sitter.

■ The defendant's first point is that the trial court erred in permitting the state to elicit details of the 1981 acts of sodomy from the victim A.W. and from the defendant and to refer to those details in the opening statement and closing argument. In his argument the defendant concedes evidence of the fact of the prior conviction was properly admitted as evidence of his guilt. However, he contends that evidence should have been limited to showing motive "by informing the jury that appellant had been convicted of sodomy in 1982 and that A.W. had been the victim at that time." This point, as well as defendant's second point, involves the general subject of the admissibility of a prior conviction or a prior criminal act as proof of a defendant's guilt of the offense being tried.

This general subject was the focus of a recent opinion of this court. *State v. Arney,* 731 S.W.2d 36 (Mo.App.1987). As noted therein, it is the general rule that evidence of other crimes is not admissible to prove the criminal character of a defendant. The most repeated maxim on the subject is as follows.

> It is also established that although proof of commission of separate crimes is generally not admissible, *such proof is admissible if it 'has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial....'* 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.'

*State v. Wing,* 455 S.W.2d 457, 464 (Mo. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971) (emphasis added). The following is a recognized affirmative statement concerning the admissibility of such evidence. "But, whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion." *People v. Peete,* 28 Cal.2d 306, 169 P.2d 924, 930 (banc 1946).

The courts of various jurisdictions have not been uniform concerning an analysis or a maxim to be followed concerning the admissibility of evidence of other sex crimes. See Annot., Evidence—Similar Sexual Offenses, 77 A.L.R.2d 841 (1961); Annot., Rape—Evidence—Other Rapes, 2 A.L.R.4th 330 (1980); Annot., Evidence—Other Sexual Offenses, 88 A.L.R.3d 8 (1978). It is clear the great majority of the courts recognize, perhaps depending upon the nature of the act, the commission of a sex crime has an inherent significance as evidence the perpetrator has previously committed or subsequently committed the same or other similar sex crime. Common sense dictates that most sex crimes are the result of a mental or an emotional state not often terminated by one act.

> Certain crimes today are recognized as stemming from a specific emotional propensity for sexual aberration. The fact that in the near past one has given way to unnatural proclivities has a direct bearing upon the ultimate issue whether in the case being tried he is guilty of a particular unnatural act of passion. The importance of establishing this fact far outweighs the prejudicial possibility that the jury might convict for general rather than specific criminality. Even granting the general rule of inadmissibility of evidence of independent crimes to prove the offense charged, many courts recognize a limited exception in the area of sex crimes to prove the nature of the accused's specific emotional propensity.

*State v. McDaniel,* 80 Ariz. 381, 298 P.2d 798, 802–803 (1956). This inherent significance is recognized by the establishment of a program for treatment, education and rehabilitation of perpetrators of sexual offenses. § 566.140.

The recognition accorded this inherent significance has received the following summarizations. "Moreover, in sex crimes generally a more liberal judicial attitude exists in admitting evidence of prior and subsequent proscribed sexual conduct. See 77 A.L.R.2d 841." *McMichael v. State*, 94 Nev. 184, 577 P.2d 398, 401 (1978), overruled on other grounds in *Meador v. State*, 101 Nev. 765, 711 P.2d 852 (1985).

The decisions in this jurisdiction have been '... markedly liberal in holding evidence of similar sex offenses admissible ... [to show knowledge, intent, motive, plan or design, identity, etc.] especially when the sex impulse manifested is of an unusual or "unnatural" character.' 1 Stansbury, N.C. Evidence, § 92 (Brandis rev. 1973). See also *State v. Spain*, 3 N.C.App. 266, 164 S.E.2d 486 (1968).

*State v. Gainey*, 32 N.C.App. 682, 233 S.E.2d 671, 673 (1977).

Sexual crimes have consistently been classified as those in which evidence of other similar sexual conduct has been recognized as having independent relevancy and courts generally hold that evidence of other sex offenses by the defendant may be admissible, whether the other offense involves the complaining witness or third parties.

*State v. Baker*, 218 Neb. 207, 352 N.W.2d 894, 897 (1984). This liberality has been severely criticized. Imwinkelried, Uncharged Misconduct Evidence § 4:16 (1984).

Perhaps the most frequently assigned basis for the admission of evidence of other sex crimes is that such evidence falls within one of the five categories quoted from *Wing*. For example, the following circumstances have been found to establish a common scheme or plan. The similar methodology by which a grandfather, accused of sex with two granddaughters, had 19 years previously abused his daughters. *Cooper v. State*, 173 Ga.App. 254, 325 S.E.2d 877 (1985). The acts of a father, accused of incest with a 15-year-old stepdaughter, in committing incest with another stepdaughter and fondling his own daughter, all of whom lived in the same household. *People. v. Jones*, 417 Mich. 285, 335 N.W.2d 465 (1983). A defendant's series of sexual relationships from 1961 to 1984 with a natural child, an adopted child and a stepchild. *Brewington v. State*, 702 S.W.2d 312 (Tex. App.1986). A series of acts between the defendant and three boys in his custody. *State v. Arnold*, 314 N.C. 301, 333 S.E.2d 34 (1985). In that case the court observed "the defendant engaged in the scheme whereby he took sexual advantage of the availability and susceptibility of his young nephews each time they were left in his custody." Id. 333 S.E.2d at 37. The acts of a father, accused of incest with a daughter, in committing incest with a different daughter was admissible "for the purpose of showing motive, a common pattern, scheme or plan." *Pendleton v. Com.*, 685 S.W.2d 549, 552 (Ky.1985). Also, "The testimony of Vivian's sisters was of strong probative force establishing defendant's lewd disposition and common scheme to exploit his daughters each time the occasion arose as they attained pubescence." *State v. Maestas*, 224 N.W.2d 248, 252, 88 A.L.R.3d 1, 7 (Iowa 1974). It has been declared, "The sexual molestation of young children, regardless of sex or type of act, is sufficiently similar to make the evidence admissible." *Phelps v. State*, 158 Ga.App. 219, 279 S.E.2d 513, 514 (1981). Also see *Anglin v. State*, 173 Ga.App. 648, 327 S.E.2d 776 (1985).

In a similar vein it has been declared "the motive, the desire to gratify his lustful desire by grabbing or fondling young girls is shown. And the other similar acts with other girls is admissible for that purpose,...." *State v. Schlak*, 253 Iowa 113, 111 N.W.2d 289, 291 (1961). Also, evidence of prior similar acts have been held admissible to establish the intent of a defendant in fondling a young girl, that is to satisfy his lust. *Findley v. State*, 94 Nev. 212, 577 P.2d 867 (1978). Testimony that a doctor, accused of sexual assault of a female patient, had similarly assaulted two other patients was held admissible. *Com. v. Fleury-Ehrhart*, 20 Mass.App. 429, 480 N.E.2d 661 (1985). In that case the trial court was required to instruct the jury such evidence was not to be considered to establish the propensity of the defendant

but only the issue of intent or a plan or the absence of mistake. Id. In regard to the admission of such evidence on the basis of the five categories or exceptions, one court observed the following:

[A] number of cases admit the testimony 'by forcing the evidence into the exceptions relating to design or intention,' McCormick[s Handbook on the Law of Evidence], at 550, it is generally received in the belief 'that certain unnatural sex crimes are in themselves so unusual and distinctive that any previous such acts by the accused with anyone are strongly probative of like acts upon the occasion involved in the charge....' *McCormick*, at page 449.

*State v. Spaulding*, 313 N.W.2d 878, 881 (Iowa 1981).

This latter proposition has in some states led to the candid recognition of the admissibility of other acts which show "a depraved sexual instinct", *Lawrence v. State*, 464 N.E.2d 923, 924 (Ind.1984); or an "emotional propensity for sexual aberration", *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366, 1372 (banc 1979); or "unnatural lust", *State v. Raye*, 73 N.C.App. 273, 326 S.E.2d 333, 335 (1985). Some states have imposed a limitation upon that doctrine. "For prior bad acts to be admissible under the sexual aberration exception, they must be similar to the crime charged, committed within a period shortly before or after the crime charged, involve sexual aberration and be offered in a case involving a charge of sexual aberration." *State v. Jerousek*, supra, 590 P.2d at 1373. Other states impose no such limitation. *Anglin v. State*, supra; *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982); *Findley v. State*, supra. However, the doctrine has been severely criticized. In some states it has been expressly rejected. *Pendleton v. Com.*, supra. Also see *Com. v. Shively*, 492 Pa. 411, 424 A.2d 1257 (1981) and *State v. Burchfield*, 664 S.W.2d 284 (Tenn.1984). This doctrine is discussed in Imwinkelried, Uncharged Misconduct Evidence § 4.14. Acts which have been held to be admissible under this doctrine include the following. The molestation of children, *State v. Jerousek*, supra; *Lawrence v. State*, supra;

*State v. Schlak*, supra; brutality inflicted during sexual intercourse, *McKim v. State*, 476 N.E.2d 503 (Ind.1985); sexual intercourse with a stepdaughter, *State v. Raye*, supra; and incest, *State v. Spaulding*, supra; *State v. Edwards*, 224 N.C. 527, 31 S.E.2d 516 (1944). Other such offenses are discussed in Imwinkelried, Uncharged Misconduct Evidence § 4:14.

No appellate court in this state has expressly adopted a rule of admissibility such as the depraved sexual instinct doctrine. Most frequently the courts of this state have determined the admissibility of such evidence by determining whether or not evidence of other offenses falls within any of the five categories mentioned above. Evidence of other crimes of forcible sodomy performed in a virtually identical manner as the instant offense has been admitted to establish identity. *State v. McDaniels*, 668 S.W.2d 230 (Mo.App.1984). Also see *State v. Young*, 661 S.W.2d 637 (Mo. App.1983) involving three rapes committed in a distinctive methodology. A similar result has been reached even though the defendant offered to stipulate as to identity. *State v. McDaniels*, supra. Evidence of deviate sexual acts toward each of two boys in custody of the defendant was held to be admissible as a part of a common scheme or plan. *State v. Dalton*, 587 S.W.2d 644 (Mo.App.1979). Also see *State v. Smith*, 694 S.W.2d 901 (Mo.App.1985); *State v. Koster*, 684 S.W.2d 488 (Mo.App. 1984). The common scheme or plan category applicable to sexual molestation of a brother and a sister has been authoritatively analyzed and applied in *State v. V.C.*, 734 S.W.2d 837 (Mo.App.1987). Evidence of prior acts of statutory rape between the defendant and the victim was held admissible to prove motive, the satisfaction of the defendant's sexual desire for the victim. *State v. Graham*, 641 S.W.2d 102 (Mo. banc 1982).

Cases in this state have also approved the admission of evidence of defendant's other similar sex crimes with the same victim to establish the probability of the defendant's guilt of a charge.

[E]vidence of prior sexual incidents was admissible (even though they could be said to constitute prior crimes) as proper evidence to show the probability that the specific acts charged had been committed and to show the relationship of the parties involved. 'They constitute the foundation of an antecedent probability or of a corroboration.' *State v. Garner,* 481 S.W.2d 239, 241[4] (Mo.1972).

*State v. Worthington,* 582 S.W.2d 286, 291 (Mo.App.1979). Also see *State v. Akers,* 328 S.W.2d 31 (Mo.1959); *State v. Williams,* 654 S.W.2d 215 (Mo.App.1983); *State v. Harris,* 612 S.W.2d 898 (Mo.App. 1981). In *State v. Cole,* 581 S.W.2d 875 (Mo.App.1979), it was said evidence of the defendant's prior abuse of a step-granddaughter was admissible to establish the disposition of the defendant. The rationale of these cases has been extended to evidence of prior incest with a daughter other than the victim of the incest charge being tried. That evidence was approved to show "a proclivity on the part of defendant to satisfy his lust upon the body of a daughter...." *State v. Nash,* 272 S.W.2d 179, 184 (Mo.1954). Also see *State v. Simerly,* 463 S.W.2d 846 (Mo.1971). The latter two cases as well as *State v. Applegate,* 668 S.W.2d 624 (Mo.App.1984) give at least tacit recognition of the depraved sexual instinct standard of admissibility. However, a question concerning a defendant's unconvicted sexual abuse of another child has been said to be an improper attempt to attack the defendant's character. *State v. Alexander,* 729 S.W.2d 467 (Mo. banc 1986).

As stated, the defendant concedes the admissibility of evidence of his 1982 conviction of sodomy upon A.W. He acknowledges the authority of *State v. Bascue,* 485 S.W.2d 35 (Mo.1972) and *State v. Williams,* supra, involving prior sex crimes with the same victim. However, he argues the state should have been limited to showing the conviction and the name of the victim and prohibited from showing any details of the offense. The underlying basis of such cases is that such evidence is admissible to establish the defendant's desire or passion for the victim. Under that basis the state was entitled to show the details of the prior

offense to show the strength and nature of that passion. Under the authorities cited above, the state was also entitled to show the similarities of the details of the prior conviction to the details of the offense being tried. The trial court, with caution, determined the relevance of the testimony of such details, as distinguished from the posed pictures, required its admission. *State v. Shaw,* 636 S.W.2d 667 (Mo. banc 1982). That determination was within the discretion of the trial court. *State v. Bannister,* 680 S.W.2d 141 (Mo. banc 1984). The defendant's first point that the state was limited to the use of a bare recitation of the prior conviction has no merit and is denied. Cf. *State v. Lane,* 613 S.W.2d 669 (Mo.App.1981).

■ The defendant's second point is that:

The trial court erred in overruling appellant's motion for a mistrial after the prosecutor asked the following question during the cross examination of appellant, 'You've been convicted of the felony of first degree deviate sexual assault on the baby sitter, ..., isn't that true?' And by overruling appellant's motion for a mistrial during the state's closing argument after the prosecutor stated, in relevant part, '... judicial proceeding against a man who sodomized her in the past and who has sodomized others since his release from prison....'

In each instance the trial court sustained the defendant's objection but denied a mistrial. The defendant contends the reference to "the baby sitter, S___ H___" caused the question to improperly use evidence of a prior conviction which was admissible only for the limited purpose of impeaching the defendant. He argues that considering the background evidence the state was using another criminal offense as evidence of his guilt of the charge being tried. It may be assumed the reference was a detail of the other offense not necessary or permissible for the purpose of impeachment, see *State v. Arney,* supra, and that such evidence did tend to establish his guilt.

However, that does not establish reversible error. Considering the background evidence, the question included the following facts. That on one day in May and three days in June, 1985, a girl 14 years of age was in an apartment with the defendant. That he there committed deviate sexual intercourse upon that 14–year-old girl. Any one of several bases establish that evidence of that offense was admissible as proof of his guilt of the charge being tried. It would certainly be relevant under the depraved sexual instinct rule. *McKim v. State*, supra. Even the limited evidence of the circumstances of that offense establish it would be relevant under the common scheme or plan exception. Cf. *State v. Arnold*, supra; *State v. Young*, supra. In one sense the 14–year-old baby sitter was in custody of the adult male defendant. The circumstances are comparable to those under which evidence of acts of sodomy upon others in confinement was held admissible. *State v. Griffin*, 497 S.W.2d 133 (Mo.1973). "As in *State v. Dalton*, [587 S.W.2d 644 (Mo.App.1979)], a number of circumstances appear in this case which indicate that all of the sexual encounters 'resulted from a scheme or plan by the defendant to exercise control and custody over his wards and to make them the target of his sexual excesses.'" *State v. Koster*, supra, at 490. That summary is appropriate to this case. The identification of the baby sitter as the victim of the other offense was not error.

Obviously, an argument referring to that evidence was not improper. There was no basis for a mistrial upon the basis of the objection to the evidence or to the argument. The defendant's second point is denied.

By his third point the defendant complains of the failure of the trial court to declare a mistrial upon his objection to three parts of the state's summation. By his testimony the defendant's father implied the victim's testimony of the defendant's guilt was the result of her enjoyment of being "in the limelight." Her mother's testimony indicated support of the defendant's denial of the charge. The defendant first objected to a comment by the state that being "made out a liar by her mother and her grandfather and her father, stepfather, isn't the limelight." That comment did not call for a mistrial. Further, the defendant did not request a mistrial. The defendant did object and move for a mistrial after the state asked the jury to imagine the impact upon the victim. This was followed by reference to some of the details of the defendant's 1982 conviction, including the act of fellatio. In his brief the defendant complains there was no evidence of how the victim was affected. A devastating impact upon the victim is a reasonable inference and a proper basis for argument. See *State v. Douglas*, 720 S.W.2d 390 (Mo.App.1986). If the reference to the act of fellatio is construed as seeking a second conviction for the acts committed in 1981, the argument was improper. However, the state was not permitted to complete its remarks concerning those acts. The state could have intended to emphasize those acts as evidence of guilt of the instant charges. In any event, the trial court sustained the defendant's objection. Whether or not the remark called for a mistrial was within the discretion of the trial court. *State v. Young*, 701 S.W.2d 429 (Mo. banc 1985), cert. denied, —— U.S. ——, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). A determination that an isolated reference to an act the jury had twice heard described did not call for a mistrial was not an abuse of that discretion. It is most unlikely the reference had a decisive effect on the jury's determination. *State v. Stuckey*, 680 S.W.2d 931 (Mo. banc 1984). The defendant's third objection was to that portion of the argument referring to the baby sitter. That objection has been determined to have no merit. Defendant's third point is denied.

■ The defendant's next point is that the trial court erred in sentencing the defendant to imprisonment for 50 years without probation or parole. He contends that is cruel and unusual punishment prohibited by the Eighth Amendment to the Constitution of the United States and Art. I, § 21 of the Constitution of Missouri. He argues the sentence is disproportionate to the of-

fense even when committed by a third offender. He cites *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

The court recently considered a contention of excessive punishment and the impact of *Solem* in *State v. Carlton,* 733 S.W.2d 23 (Mo.App.1987). It is not necessary to restate the conclusions reached in that opinion. The legislature has determined that a defendant once previously convicted of a felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit such an offense is a persistent sexual offender. The minimum sentence to be imposed upon a subsequent conviction for such an offense is imprisonment for thirty years without probation or parole. § 558.-018. The defendant has twice been previously convicted of such an offense. His reprehensible actions were continuous. This court considers the offense committed upon A.W. during the first months of 1985 to be aggravated, brutal and of grave consequences to the victim and society. Within the tests announced in *State v. Carlton,* supra, this court finds the punishment is not grossly disproportionate to the offense and is not such as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances. The defendant's contention of excessive punishment has no merit.

■ The defendant's fifth point concerns the failure of the trial judge to disqualify himself. The case was originally assigned to Division II. The defendant's request for disqualification on the court's own motion was denied. He then effected a mandatory disqualification by a motion under Rule 32.07(a). The case was transferred to Division I. The defendant then filed another request for disqualification of the court on the court's own motion. The defendant contends the denial of this request was reversible error.

At the hearing upon that motion the defendant urged the following reasons for such self-disqualification. The trial judge had accepted the defendant's guilty plea in 1982 and sentenced him to the minimum term of imprisonment. The trial judge had disqualified himself in the case that result-

ed in the defendant's conviction for having committed sodomy upon the baby sitter. The trial judge speculated that such self-disqualification was because of some familiarity with a juvenile file. He was certain it was not because he had previously accepted the defendant's plea of guilty. In denying the request the trial judge's remarks included the following:

> As to taking the guilty plea in 1982, of course I've been a judge 23, 24 years, something like that, and I have many cases come before me now where I've had the same defendant before me on prior cases, and if I disqualified on every case where I've had some contact with the defendant before, had him before me before, I would be disqualifying a pretty high percent of my cases. The fact that he appeared before me I don't think is grounds for requiring me to disqualify myself. I have no knowledge of this case at all other than what is here in this file that's before me. I have had no contact with the juvenile file and I think there's no reason why the Court would be biased and prejudiced or why I should appear that way to a reasonable observer.

The defendant had been granted one change of judge. The duty of the successor judge "to remain as judge in the cause ... is equally as strong as his duty to recuse himself under circumstances requiring it." *Molasky v. State,* 710 S.W.2d 875, 878 (Mo.App.1986). Under the circumstances, the trial judge's acceptance of the earlier plea does not demand his self-disqualification. "Mere adverse rulings and previous contacts in other litigated matters do not form the basis for such a claim." Id, at 879. The defendant's unsupported assertion he was denied a fair trial is not worthy of comment. The record demonstrates the trial judge acted in accordance with the highest calling of his profession. Cf. *Logan v. State,* 712 S.W.2d 9 (Mo.App. 1986); *State v. Presley,* 694 S.W.2d 867 (Mo.App.1985). The defendant's fifth point is denied.

The defendant's last point is that the trial court erred in admitting evidence of

what A.W. told Officer Myers as this action denied him the right to confrontation and a fair trial. As stated, on June 13, 1985, A.W., then 11 years of age, was taken to the police station where she was interviewed by Officer Myers. The state made it be known it intended to offer portions of A.W.'s statement under § 491.075. That section authorizes the reception of such statements concerning certain sex crimes when made by a victim under the age of 12, under the conditions set forth therein. The section has been outlined and discussed in *State v. Creviston,* 735 S.W.2d 91 (Mo.App. 1987), and *State v. Mills,* 723 S.W.2d 68 (Mo.App.1986). In this case the trial court held the prescribed hearing and found the content and circumstances of the statement provided sufficient indicia of the reliability. § 491.075(1). The officer testified to four statements concerning the instant offense made to her by A.W.

The exact basis of defendant's contention of error is not clear from the point stated. In argument under that point he asserts the action of the trial court denied him the right of confrontation contrary to the Sixth Amendment to the Constitution of the United States and Art. I, § 18(a) of the Constitution of Missouri. This is tantamount to an attack upon the constitutionality of § 491.075.

To preserve a constitutional question for review here it must be raised at the first opportunity; the sections of the Constitution claimed to have been violated must be specified; the point must be preserved in the motion for new trial, if any; and it must be adequately covered in the briefs. *Magenheim v. Board of Education of School District of Riverview Gardens,* 340 S.W.2d 619, 621 (Mo.1960). Similar statutes have been upheld against constitutional attack. Myers, Child Witness Law and Practice, § 5.38 (1987). The defendant made no contention the statute was unconstitutional before the hearing thereunder. He participated in that hearing. Only after the trial court announced it would find the statements admissible did the defendant contend the action was contrary to said Art. I, § 18(a). This did not preserve the question of the constitutionality of that statute for review. Cf. *State v. Barnes,* 345 S.W.2d 130 (Mo.1961). Defendant's belated argument of unconstitutionality does not remove this case from the jurisdiction of this court. *State v. Webb,* 646 S.W.2d 415 (Mo.App.1983).

The defendant also argues the evidence did not establish the statement given to the officer was reliable. There was evidence the statement was taken by an experienced police officer. She talked with A.W. concerning the fact her statement could cause the defendant much trouble. A.W. was not confused, although she was reluctant to answer questions. The officer did ask leading questions, but not all of A.W.'s answers were in the affirmative. A.W. twice read her written statement and said the contents were true. The finding of the trial court of sufficient indicia of reliability is supported by the evidence. The defendant's last point is denied. The judgment is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.