## 71670. FRINK v. THE STATE.
(340 SE2d 631)

BIRDSONG, Presiding Judge.

Vermon Frink appeals from his conviction of the offense of cruelty to children. Frink and his wife, Jacqueline, were indicted and tried for alleged acts of cruelty to her son, Deangelo. During the trial, Jacqueline entered a plea of guilty and testified for the state against her husband. Her son, Deangelo, was four years of age at the time, and because she and her husband were working different shifts at their places of employment, Deangelo had to be placed with a day care center. She gave instructions to the day care center that her son was not to be picked up or held. One day Deangelo was limping and a

teacher picked him up. Jacqueline instructed the teacher to put him down, that he could walk. Frink informed them that he had given the child a whipping because he was "so hard-headed." The following day Deangelo could not play with the children and could not eat his breakfast. He tried to lift a spoon and could not. A teacher fed him his lunch and assisted him to the bathroom. When his pants were lowered it was observed that his buttocks were covered with "whelp-like things." When his shirt was raised, she saw a "mass of scars on his back" and a recent bruise in the center of his spine. The day care center called the Department of Family & Children Services. A person from that office examined the child and called police. When a police officer examined the child, he called the juvenile court and asked the court for a protective custody order and for transportation to the Cobb General Hospital for medical care.

Deangelo was seen by the emergency room doctor and transferred to a pediatrician for treatment. The state introduced 35 pictures showing injuries to the child. The emergency room doctor, the pediatrician, and a forensic pathologist testified to the multiple injuries and burns to the back of the legs, back, and buttocks of Deangelo. One hip and ankle were swollen as was one elbow and one hand. X-rays revealed that the right arm had been broken and never treated. The broken arm had occurred within the past 3-4 weeks. The injuries were of different ages, some were obviously recent, with redness and swelling and many had healed and formed scars. There were red areas on the buttocks which indicated blunt trauma and linear red areas on the arms and legs which indicated a linear object was used to inflict trauma. The burns were in various stages of healing. These indicated they were third-degree burns as where the full thickness of the skin is lost and scar formation follows. All doctors were of the opinion such a constellation and variety of injuries could not be accidental and were indicative of those found in the "childhood maltreatment syndrome or child abuse syndrome . . . battered child syndrome."

Jacqueline Frink testified for the state as a condition of the acceptance of her plea of guilty. She told of using a "limber switch" to discipline the child but said she had not touched the child after September of 1983, and these injuries were discovered on February 9, 1984. She had seen her husband, the defendant, spank the child and switch him with a "limber switch" which had some "prongs" on it. On February 9, the child did not want to go to day care and the defendant had picked up an electric iron extension cord and struck Deangelo with it. A neighbor testified that she had heard a child "being hit" and "slapped," and crying and screaming for 45 minutes one evening in July of 1983. She called the management to send a security guard to the defendant's apartment.

Vermon Frink brings this appeal from a jury verdict of guilty.

*Held*:

1. Prior to trial, the court granted defendant's motion in limine in which it was held that the state could not introduce evidence that Deangelo was in protective custody, unless the defendant opened the door. The prosecuting attorney who began the trial had to leave during the trial because of a death in the family. Another prosecutor, who was not familiar with the case, took over the prosecution. Thereafter, Mrs. Frink changed her plea of not guilty to guilty and testified for the state. Mrs. Frink advised the court that she wanted a new attorney, that the attorney had pressured her into pleading guilty, and she was not guilty. After this crisis was averted and Mrs. Frink agreed to abide by her guilty plea and tell the truth, counsel discussed the prior holding as it pertained to protective custody of the child.

The new prosecuting attorney stated that he was concerned what the jury would think when he questioned the detective and it was revealed that a warrant was not taken out for the defendant's arrest until nine days after discovery of the injuries to the child. He questioned whether they would infer that it was not important, or that the officer did not think the child might be in any danger. The prosecutor wanted to show that the child was out of the Frinks' house during that time. The trial court modified its earlier holding and advised the prosecutor: "You could go to the point that the reason that he didn't — you know, that he went into his investigation, and the reason that he didn't immediately take a warrant while he was doing his investigation is that the child was not in the home, without saying under what authority."

The defendant complains, in his brief, of four exchanges between the state and the witness Jacqueline Frink. In none of the referenced testimony did the state ask the witness a question which would contravene the latter ruling of the trial court. For example, the prosecutor asked Mrs. Frink: "Q. And that's part of the reason you're having to plead guilty, you're going to have to be under strict probation for ten years? A. Yes, I have. Because I love my boys, and I do want them back." Following this revelation by Mrs. Frink, counsel did ask Mrs. Frink: "Q. That's one reason when — if you ever get your child back, that's one of the reasons why the judge has told you that you are going to have to take a parenting course, didn't he?" This question followed the earlier revelation that the child was not with his parents and it did not exceed the scope of the ruling of the court that the state would be permitted to show "the child was not in the home, without saying under what authority." At the time that the objectionable testimony was given, there were no objections, no motion to strike, no request for corrective instructions, nor was a motion made for mistrial. The trial court was never advised that its ruling may

have been breached or that corrective action was thought to be necessary.

A motion in limine may properly be used to obtain a ruling on admissibility of evidence prior to trial and such ruling will control unless modified at trial. *State v. Johnston*, 249 Ga. 413, 415 (291 SE2d 543). Here, the ruling was modified at trial and we find no subsequent deliberate or flagrant violation of the latter ruling. In addition, counsel for the defendant elicited the same information from other witnesses on several occasions. Proof of the same facts by legally admissible evidence renders harmless a prior admission of incompetent or inadmissible evidence. *Robinson v. State*, 229 Ga. 14, 16 (189 SE2d 53); *Payne v. State*, 152 Ga. App. 471, 473 (263 SE2d 251); *Tuggle v. State*, 149 Ga. App. 844, 845 (256 SE2d 104). And, even if any admission was error it is "highly probable" it did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

2. It is argued that "[t]he trial court erred in permitting the state to refer to the defendant as a convicted felon. . . ." The brief states that "defendant was referred to as a convicted felon on two occasions . . . ." In neither instance cited by counsel did the prosecutor refer to the defendant as "a convicted felon." On the first occasion, counsel asked defendant if he had ever wanted to be a lawyer when he was growing up. After receiving an affirmative answer, he was asked: "Well, you know convicted felons can't be one. Did you know that? A. Yes, sir." There are two permissible inferences from such a question. One, the defendant is a convicted felon. Two, if the defendant is convicted of the present charge, he will be a convicted felon and will not be eligible to become an attorney. It was affirmatively shown on several occasions that defendant had no prior convictions. Hence, the only reasonable inference left is one regarding the outcome of the present case.

At a later point in the trial the prosecutor stated: "You know — you know, convicted felons have their own — did you — let me just tell you and see if you know that convicted felons have their own sort of class system. Do you know what's down at the bottom of the class system? Child molesters and child abusers. . . . A. I'm not a child abuser, sir." Although we see no relevance to the statement, and it is more argumentative than examinative, it is not subject to the objection made. In view of the evidence that defendant had not been convicted, the thrust of the demeaning type of inquiry related to the possible status of the defendant in the event of a conviction. Again, we note the absence of objection or a motion to strike and no request for corrective action. Counsel may not idly sit by and watch when possible objectionable evidence is presented and on appeal claim error. It is necessary, in order to make the same a basis for appellate review that opposing counsel make proper objection or invoke some ruling of

the court. *Johnson v. State*, 226 Ga. 511, 514 (175 SE2d 840). A party cannot ignore what he thinks to be error, take his chance on a favorable verdict, and complain on appeal. Id. This enumeration is without merit.

3. We find no error in the admission of the photographs which were illustrative of the injuries suffered by the child. Although some photos showed the injury in the context of the whole body, and a different photo showed a closeup of the same injury, we do not find any objectionable redundancy. Each photo is illustrative of injury in a different aspect, one as to severity, and another with relation to the whole of the numerous injuries on the entire body. In accordance with *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347), the trial court screened each duplicative photo for relevance and found no error. We also find no error.

4. Defendant argues it was error to permit the defendant's co-defendant, his wife, to enter a plea of guilty "in the middle of the trial. . . ." It is clear beyond cavil that the trial court has no control over when a defendant may change his or her mind and desire to substitute a plea of guilty for not guilty. However, whether the plea is accepted and whether the jury is informed is another issue. Out of the presence of the jury, the court extensively examined Mrs. Frink about the nature of her plea and its consequences. The trial court was authorized to find the requirements of *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274), were met and the plea of guilty was voluntarily and intelligently entered. *Barksdale v. Ricketts*, 233 Ga. 60 (209 SE2d 631). Defendant's counsel insisted upon the jury's being advised of the guilty plea and attempted to take advantage of it. Counsel asked defendant's wife if she was required to tell the truth as a condition of her plea and then counsel argued that her testimony that the defendant merely used a "limber switch" and an electrical cord to discipline her child was the truth. Mrs. Frink's testimony was that the injuries identified as burns by the doctors were "cold sores." In sum her testimony, as contrasted to the injuries represented by the photographs, was favorable to the defendant. Counsel's attempt to impress the jury that Mrs. Frink's testimony was the truth was a deliberate trial tactic which was not successful. On appeal, counsel argues that advising the jury of the entry of the plea of guilty by Mrs. Frink was error. This is not the error urged in the enumeration. It was not error for the trial court to accept a plea of guilty of the co-defendant "in the middle of the trial. . . ." And, it was the defendant's counsel who wanted the jury informed of the plea of guilty as a trial tactic. This enumeration is without merit.

5. In the brief, counsel argues allegations of error different from those enumerated. Error argued but not enumerated will not be considered. *Hibbert v. State*, 146 Ga. App. 887 (3) (247 SE2d 554). And,

enumerations of error cannot be enlarged by means of statements in the brief of counsel to include issues not made in the enumeration. *Key v. State,* 147 Ga. App. 800 (2) (250 SE2d 527).

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JANUARY 29, 1986.

*Linda B. Borsky,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney,* for appellee.