## 77818. WILLIAMS v. THE STATE.
### (381 SE2d 65)

BIRDSONG, Judge.

Eric Eugene Williams was convicted of rape, armed robbery, and two counts each of kidnapping, terroristic threats and possession of a firearm during the commission of a crime. He appeals from the denial of his motion for new trial.

The evidence presented at trial showed that the victim and her eight-year-old son had completed grocery shopping on August 23, 1985, at about 8:00 p.m. in a neighborhood shopping center in Savannah, and were preparing to drive away from the well-lighted parking area when a man she identified as appellant approached their car, put a gun to her head and threatened to kill her unless she opened the car door. Appellant entered the car on the passenger side and held the gun to the victim's son's head, threatening to shoot him if she did not comply with his demands. The victim drove out of the parking lot, following the directions given by appellant until he ordered her to stop and let him drive because of her nervousness. Appellant exited and reentered the car from the driver's side, where his fingerprint was subsequently found on the front door handle. While appellant drove, he continued to display the pistol and made numerous threats to the victim and her son to shoot both of them or blow their brains out.

After arriving at an isolated location, appellant ordered the victim to undress and get in the backseat and for the son to crouch beneath the dashboard. While raping the victim, appellant pressed the gun against her head and continued to threaten to kill her and her son if they did not obey him. Afterwards, he became even more aggressive and forceful in his threats and drove the victims back to another parking area in the same shopping plaza, where he took $11 from the mother and fled. She drove home, and her husband immediately called the police to whom the victim gave a detailed description of appellant, including such particular characteristics as his large hands and stomach, skin color, body and facial hair, his clothing, and gun. She and her son both picked appellant from a live lineup on February 27, 1986, and were "about ninety-five percent sure" he was their assailant. On March 3, 1986, police executed a search warrant of

appellant's house, recovering pants and a shirt identified by the victim as the same as those worn by the perpetrator. Although appellant denied owning a handgun, police also found some .32 caliber ammunition. Both the victim and her son positively identified appellant in court and at two prior court appearances.

A physical examination of the victim shortly after the rape revealed the presence of recently deposited sperm in her vagina. Expert testimony presented by the State established that the victim was a "secretor," one of about 80 percent of the population whose blood type can be derived by examination of body fluids. The victim has international blood type O; chemical analysis of semen obtained from her vaginal swab revealed the presence of a small amount of H-reactive substance, which indicated that the semen donor was either a non-secretor of any blood type or a blood type O secretor. Appellant was found to be a non-secretor with blood type O.

Prior to trial, the trial court heard arguments of counsel and ruled admissible evidence of a similar transaction. After limiting instructions were given, the State presented evidence that on December 13, 1985, another woman had been raped by a man she positively identified both in and out of court as appellant, after she was lured to a vacant apartment he pretended to want to rent. Her vaginal swabs showed that she had been raped either by a blood type A secretor or a non-secretor. A secretor-rapist could not have deposited both semen samples; thus the rapist's semen could have come only from a non-secretor, or the 20 percent of the population of which appellant was a member. The statistical size of this segment was further reduced by the elimination of non-black persons and women to only 5 percent of the population, and the percentage of possible suspects became even smaller with the exclusion of children and the elderly.

Appellant denied raping either woman and presented four alibi witnesses who were friends or co-workers, two of whom established appellant's alibi on the wrong dates. The testimony of the other witnesses was also less than positive and not objectively verifiable. *Held*:

1. Appellant contends that the trial court erred in admitting testimony of the rape of the other woman, as this impermissibly placed his character in evidence and denied him a fair and impartial trial. Appellant was positively identified by each of the victims as the perpetrator of her rape. The similarities of the two crimes committed were numerous, including the physical characteristics of both victims, the rapes' times and locations, and the fact that both rapes took place on a rainy day when appellant, who was a construction worker, would not be working. The perpetrator was dressed in the same type work clothes, used similar threats both times, and raped both victims in basically the same manner.

" 'Evidence of similar transactions or crimes is admissible when it

is shown that the defendant is the perpetrator of the similar offense, and there is sufficient similarity between the independent crime and the offense charged that proof of the former tends to prove the latter. [Cit.] Evidence of independent crimes has been admitted to show bent of mind and course of conduct, and has been most liberally extended in the area of sexual offenses. [Cit.] There was no question that appellant was the perpetrator of the similar offense[s], and the modus operandi of appellant was the same. Thus, such evidence was admissible to show appellant's bent of mind. . . . [Cit.]' [Cits.]" *Claypool v. State*, 188 Ga. App. 642 (1) (373 SE2d 765); accord *Oller v. State*, 187 Ga. App. 818, 820-821 (371 SE2d 455).

2. Appellant asserts that the trial court committed reversible error in failing to give timely curative instructions in regard to comments of the prosecutor in his opening statement concerning evidence to be presented of the other rape. Appellant was aware this evidence had been ruled admissible and that the State was going to present it; therefore, the reference to it was not improper. *Burroughs v. State*, 186 Ga. App. 40 (6) (366 SE2d 378); *Poss v. State*, 167 Ga. App. 86 (5) (305 SE2d 884).

3. The trial court entered two orders, drafted by defense counsel, prior to trial authorizing a court-appointed fingerprint examiner and a court-appointed private investigator to assist appellant in the preparation of his defense. The order authorizing hiring the private investigator specified that any information obtained was to be reported only to the attorney for appellant and not to be divulged to any other person. Appellant asserts that the trial court erred in allowing the prosecution to introduce fingerprint evidence obtained in direct violation of that order.

We find no error. The information received by the State from appellant's fingerprint examiner, that the print lifted from the victim's car matched appellant's print, was not obtained in violation of the court's order since the order authorizing an independent fingerprint examination did not prohibit disclosure of the results, and appellant did not instruct his examiner not to divulge his findings to the State. Moreover, the State showed that its own police expert reached the same results in the test he conducted. Thus the same information was elicited from another witness, and such "[p]roof of the same facts by legally admissible evidence renders harmless a prior admission of incompetent or inadmissible evidence. [Cits.] And, even if any admission was error it is 'highly probable' it did not contribute to the verdict. [Cit.]" *Frink v. State*, 177 Ga. App. 604, 607 (1) (340 SE2d 631).

4. Appellant assigns error in the trial court's allowing the State to "rehabilitate" two jurors after they had been excused for cause, thereby forcing the defense to exercise a valuable peremptory strike in selecting an alternate juror. It appears from the transcript that

while these two veniremen initially expressed reservations about their ability to be impartial in a rape case, upon reflection and the opportunity to respond more fully, one of these women stated that she would be able to come to an impartial opinion based solely on the evidence presented at trial and the charge of the court, and was qualified as an alternate. However, she did not serve on the jury.

Appellant has failed to illustrate any harm as a result of the trial court's action. "While the venireman may have initially expressed some doubt as to [her] impartiality, this does not demand as a matter of law that [she] be excused for cause. The venireman having indicated to the trial court that [she] could render a fair and impartial verdict based solely on the evidence presented in court the venireman was prima facie competent to serve as a juror in the case sub judice. Whether to strike a juror for favor lies within the sound discretion of the trial court. Under the circumstances of the case sub judice, we find no abuse of the trial court's discretion. [Cits.] This enumeration of error is without merit." *Durham v. State*, 185 Ga. App. 163, 165 (2) (363 SE2d 607). See also *Jones v. State*, 184 Ga. App. 4 (2) (360 SE2d 599).

5. On the day of trial, appellant made a verbal request to conduct an in-camera inspection of the State's files to obtain a composite sketch of the perpetrator of the other rape. The State explained that this document had been in the possession of a detective who was deceased, and was no longer available, although the prosecutor had personally searched the police files for it. During argument on this motion, counsel for appellant conceded that he had viewed the State's entire file prior to trial and that the composite was not in it, but he enumerates as error the trial court's refusal to conduct an in-camera inspection therefor upon this motion.

"Here, as in the case of *Hill v. State*, 248 Ga. 304, 305 (283 SE2d 252) (1981), the 'appellant has not come forward with anything to suggest a suppression of material, exculpatory information by the [S]tate. The burden is on the appellant to establish a *Brady* violation . . . and this burden has not been satisfied in the instant case.' " *Reed v. State*, 249 Ga. 52, 56 (3) (287 SE2d 205). "It is elementary that counsel for the State can make available only such evidence as it has in its file, or of which it has knowledge, and 'is under no requirement to conduct an investigation on behalf of a defendant . . . .' [Cit.] Nor is an accused, as a matter of right, entitled to receive copies of police reports and investigations made in the course of preparation of a case against a suspect. [Cit.] Further, our Supreme Court and the U. S. Supreme Court are in agreement that 'there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." ' [Cits.]" *Fuqua v. State*, 183 Ga. App. 414, 417-418 (1) (b) (359 SE2d

165); accord *Massengale v. State,* 189 Ga. App. 877 (4) (377 SE2d 882). We find no evidence of suppression so as to deny a fair trial.

6. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of the offenses charged. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Burroughs,* supra.

*Judgment affirmed. Banke, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully except as to Division 3. In that regard I agree that allowing the State to introduce the private investigator's test results was not error because disclosure to the State had not been prohibited in the first place.

The "same facts" evidentiary rule, however, does not apply to this evidence. The fact that the police expert tested defendant's fingerprints and concluded they matched the print on the car is not the same body of facts or information which was established by the private investigator, except for the ultimate fact. The facts he testified to were that he conducted a separate and independent test himself, the results of which prompted his opinion that the fingerprint on the car was defendant's. Proof that a second test, by the defendant's witness, corroborated and so enhanced the credibility of the first test results, reached by the State's witness, is not proof of the same facts.

The fact of concern in *Frink v. State,* 177 Ga. App. 604, 606 (1) (340 SE2d 631) (1986) was that the child was not in the home. The court held that since that fact was elicited by defendant from other witnesses several times, it was harmless even if error for the State to elicit it indirectly from Mrs. Frink. The rule did apply there because it related to various ways and instances in which the same fact was made a part of the composition of evidence.

DECIDED MARCH 8, 1989.

*Charles C. Grile,* for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney,* for appellee.