A89A0436. BROWN v. THE STATE.
(384 SE2d 254)

BIRDSONG, Judge.

Appellant, John Ruddin Brown a/k/a John Williams, appeals his conviction of robbery of a purse by sudden snatching, financial transaction card fraud, and financial transaction card theft.

The victim was loading groceries into her car when her purse, which contained her Rich's card, was snatched from her possession by a man whom she later identified as appellant. Appellant was apprehended approximately 15 minutes later attempting to purchase a gold chain from Rich's at Cumberland, a store located a little more than a quarter of a mile from the crime scene.

Appellant testified and judicially admitted that he had attempted to purchase a gold chain using a credit card which he knew was stolen; however, appellant denied committing the robbery and claimed that he had purchased the card from a friend named Isaiah Sanders for $50. *Held*:

1. Appellant asserts that evidence was improperly admitted that the victim identified appellant as her assailant at a one-on-one showup identification conducted at the Smyrna police station.

The evidence of record reveals that someone at the Smyrna police department called the victim to come to the station to make an identification. The victim went to the station and was using a pay phone when she "looked across the police station" and saw appellant. She immediately recognized that he was the one who robbed her. She was startled as she did not initially see the policeman who was shorter and several feet behind appellant. Appellant was escorted through the back door of the station to the book-in area; the police officer saw the victim using the pay phone approximately 25 feet away, after he and appellant had entered the station. The victim also made an in-court identification of appellant. Appellant did not recall seeing the victim at the police station. The victim testified the police officer subsequently asked if she could identify appellant and she told him she could.

In determining whether a due process violation occurred in the conduct of a pretrial confrontation between the victim and appellant, "the test is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *McCoy v. State*, 190 Ga. App. 258 (3) (378 SE2d 888). Although it appears the confrontation in this instance was accidental rather than planned, we will, out of an abundance of caution, apply the above test to the issue before us. In making this determination, the following factors will be considered: (a) opportunity to view the defendant at the time of the offense (although the victim only viewed appellant's face briefly, appellant turned and looked at the victim who was pursuing him, appellant was only three to five feet away at the time, the area was fairly-well lighted, and the victim was able to distinguish appellant's features at the crime scene "[c]lear enough to know it was the man they brought in that night"); (b) the witness' degree of attention (the witness exhibited a high degree of attention and collectiveness of thought as reflected by her ability to recognize the clothing appellant was wearing, by her observation of appellant's features during fresh pursuit, by her observation that as the get-away vehicle rapidly left the scene the appellant's "right leg was still hanging out of the car," and by her request to another motorist, later identified as a man named Arnold, to follow the fleeing car); (c) the accuracy of the witness' prior description (the witness'

estimate of the fleeing appellant's height was only three inches under appellant's actual height of six feet, but appellant's weight appears to have been initially underestimated by the witness by perhaps as much as 40-45 pounds); (d) the level of certainty demonstrated (the witness made her identification of appellant at the police station without any hesitancy; she testified that she was then able to recognize appellant's facial features, and that the clothes he was wearing were the same as those worn by the robber at the time of the incident; and she made an in-court identification of appellant without expressing any reservations and without any apparent in-court hesitation); and, (e) the length of time between the crime and the identification (in this case only about one and one-half hours elapsed between the time of the incident and the witness' identification of appellant at the police station; that is a relatively short period of time and the record does not affirmatively demonstrate any lapse in the witness' memory during this time span). Compare *McCoy*, supra. Balancing the above factors in light of the totality of the operative circumstances, we find that there exists no substantial likelihood of irreparable pretrial misidentification of appellant.

Assuming arguendo some form of taint had occurred in the pretrial identification of appellant, a witness' in-court identification may still be admitted provided it has an "independent origin" therefrom. *McCoy*, supra at 261. Moreover, the fact that a witness may have only a " 'fleeting' opportunity to observe" a perpetrator at the crime scene does not per se render the in-court identification inadmissible. See *Jones v. State*, 258 Ga. 25 (3) (365 SE2d 263). Considering the totality of the circumstances, we find that appellant's in-court identification by the victim had such an "independent origin" in this case.

2. Appellant asserts that the evidence submitted at trial did not prove his guilt of robbery beyond a reasonable doubt. Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty of the offenses of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Baggett v. State*, 257 Ga. 735 (2) (363 SE2d 257).

3. Appellant asserts that failure of the prosecution to provide him with certain exculpatory evidence operated as a denial of his due process rights under the Fourteenth Amendment to the United States Constitution as interpreted in *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215).

a. Appellant's enumeration of error on the basis that he was denied pretrial information that the automobile used in the robbery was registered to Isaiah Sanders is without merit. The transcript of the post-trial hearing on appellant's motion to amend the trial record, properly transmitted to this court, reveals that appellant's trial de-

fense counsel was duly notified "that the vehicle used in the commission of the robbery did belong to Isaiah Sanders." The entire record and transcripts before us are devoid of any information to refute this showing. Appellant has the burden to establish a *Brady* violation and he has not met his burden in regard to this matter. *Boatright v. State*, 192 Ga. App. 112 (2) (___ SE2d ___); *Williams v. State*, 190 Ga. App. 646 (5) (381 SE2d 65).

b. Appellant's enumeration of error on the basis that he was denied pretrial information that a man named Arnold had made a statement positively identifying Isaiah Sanders as one of the participants in the robbery also is without merit.

Mr. Arnold testified at the post-trial hearing that as he was leaving the shopping area he saw a girl running fast but thought nothing of it until she flagged him down; he then followed the get-away car and identified it as being a car which belonged to Isaiah Sanders. Although he did not see Sanders face-to-face, he was able to determine that it was Sanders driving the car. Mr. Arnold saw no one else in the vehicle. Arnold was familiar with both the car and Sanders, as he previously had sold the car to Sanders.

In a subsequent phone conversation with Detective Maloney, Arnold informed Maloney that the car belonged to Isaiah Sanders. Mr. Arnold testified that he either informed Maloney that it was Isaiah Sanders driving the car or that he had recognized who was driving the car; but Arnold also expressly admitted that he may not have told Maloney who was driving the car.

Detective Maloney testified that Arnold told him that he possibly knew who owned the car and said it belonged to Isaiah Sanders; Arnold did not indicate to him that he recognized Sanders as driving the car. The State made a proffer in its place that it was not aware, until preparation of the post-trial hearing had begun, of Arnold's contention that he had seen only one person (whom he believed to be Sanders) in the car. This proffer was not contested by appellant.

No evidence appears in the record which establishes that any of the information in question was not provided appellant's trial defense counsel either before or during trial. Moreover, Arnold's name and address appeared on the State's supplemental witness list, and Arnold, though not called as a witness, was outside the courtroom and thus physically present during at least part of the trial.

The evidence before us clearly establishes that Arnold did not actually witness the robbery. Moreover, from the posture of the evidence, appellant has failed to establish that Arnold in fact informed the police that he had observed either Isaiah Sanders or anyone that he knew driving the car. Accordingly, appellant has failed to carry its burden of establishing that a *Brady* violation, as asserted in his enumeration of error, has occurred. See *Boatright*, supra; *Williams*,

supra.

Assuming arguendo the police did possess certain of this information before trial, " 'counsel for the State can make available only such evidence as it has in its file, or of which it has knowledge, and "is under no requirement to conduct an investigation on behalf of a defendant. . . . [T]here is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' " ' " *Williams,* supra at 649. In *Massengale v. State,* 189 Ga. App. 877, 881 (377 SE2d 882), we stated "[i]n the absence of a clear showing that . . . information was wilfully and intentionally concealed from the defense, we are inclined not to impute to the prosecutor knowledge possessed by the local police and probation authorities." (Emphasis deleted.) The record and transcripts contained no evidence that any wilful or intentional concealment occurred in this case.

We further note that in his motion to amend the record, appellant expressly asserted that "during the early stages of trial Detective Maloney . . . informed attorney for [appellant] that this statement [that Arnold positively identified Sanders as a participant in the robbery] had been made." Assuming arguendo this assertion had been so proven, it is well-settled that a *Brady* violation does not occur when *Brady* material is made available to the defendant during the trial. *Houston v. State,* 187 Ga. App. 335 (3) (370 SE2d 178).

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 10, 1989.

*Kenneth L. Chalker, Jr.,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Thomas A. Cole, Assistant District Attorneys,* for appellee.

