A96A1077, A96A1078. BARBER v. GILLETT COMMUNICATIONS OF ATLANTA, INC.; and vice versa.
(479 SE2d 152)

BEASLEY, Chief Judge.

Barber sued Gillett Communications, d/b/a WAGA-TV, for defamation claiming that the television station prepared and broadcast a report which implied Barber had committed a crime. The report primarily concerned the comments of an elected official, Billy McKinney, as they concerned the criminal mistrial of Frank Redding, another elected official. McKinney believed Redding and other elected officials were the object of racially motivated selective prosecution. Both Redding and McKinney are African-American. The report discussed prior prosecutions against both black and white officials, showing clips of several black officials, then five white officials, including Barber who had served on the Public Service Commission. While Barber's image was on the screen, and immediately after, a voice said: "A Public Service Commissioner was forced into quitting . . . after investigators turned up allegations of impropriety." Then a few more images were presented including statistics showing breakdowns of prosecutions against public officials based upon race. McKinney was then shown saying: "Not a single white case was as a result of a sting operation. Every one of those white people were violating the law, and they were caught violating the law."

The allegations against Barber to which the report referred concerned an incident in which Lockwood and Hudson, officials of a trucking company regulated by the Public Service Commission, gave $800 in cash to Barber. They originally approached Barber expressing dissatisfaction with a decision of a hearing officer. Barber stated that no process existed for appealing the hearing officer's decision but a public hearing before the Public Service Commissioners would be necessary. Hudson and Lockwood stated that they wished to contribute to Barber's re-election campaign and handed him two envelopes containing a total of $800.

Hudson then approached Pafford, another commissioner, offering financial help and requesting Pafford's support in overturning the hearing officer's decision. On a separate occasion, Hudson and Lockwood similarly addressed Commissioner Lovett. At a meeting of the commissioners shortly after Barber had been approached, and at which Barber was present, Pafford related Hudson's approach to himself, expressing concerns about its propriety, and Barber said nothing. Pafford eventually went to the Georgia Bureau of Investigation, precipitating a full investigation. Barber did not report the money Hudson and Lockwood had given to him as a campaign contribution until after investigators inquired about it.

After trial, judgment was entered on the jury's verdict in Gillett's favor. In Case No. A96A1077 Barber appeals the judgment, and in Case No. A96A1078 Gillett cross-appeals the court's denial of its motion for directed verdict.

## Case No. A96A1077

1. Barber first contends the court erred in allowing opinion testimony as to whether he had engaged in any illegal activity. He filed a motion in limine requesting in part that any evidence relating to opinions of any state officials regarding the allegations against him be excluded. During a hearing on the motion, the court declared that the witnesses could not give opinions as to whether a crime had occurred or whether Barber would have been convicted if tried. Barber quotes in his brief the court's statement "You just can't give opinions." It is clear in the context of the discussion of the motion and the court's several statements that the ruling was not a prohibition against any evidence that could conceivably be considered an opinion on all matters. Rather it prohibited questions intended to elicit testimony phrased as fact that Barber had committed a crime in connection with his contact with Hudson and Lockwood. The court specifically stated that witnesses could testify to facts discovered in the investigation of the allegations against Barber.

Barber cites numerous instances which he argues violated the

court's order on the motion in limine. These occurred during the testimony of Kohler, an assistant attorney general involved in the investigation of Barber, and Attorney General Bowers. First, it must be noted that this was not a criminal trial against Barber. Rather, Barber had to prove that Gillett made the broadcast with knowledge that its innuendo that Barber had committed bribery was false, or at least with reckless disregard as to whether it was false. *Barber v. Perdue*, 194 Ga. App. 287, 288 (390 SE2d 234) (1990).

Kaiserski, the reporter who prepared the report, testified that when he first learned of the allegations about Barber, he spoke with Bowers and was told Barber had broken the law and Bowers reluctantly forced Barber to resign rather than face prosecution. He also testified that McKinney's remark that "every one of those white people were violating the law" was not intended or positioned to refer to the five persons whose faces appeared on the screen, but rather to those who were reflected in the statistics shown immediately before McKinney's words, and was not intended to have any connection to Barber. He testified the report as presented was completely accurate. The testimony of Bowers and Kohler was relevant to show what Kaiserski knew about the matter, and whether his knowledge showed any reckless disregard for the truth. That was the ultimate issue for the jury's consideration, not whether Barber had actually committed the crime of bribery, although that defense was also available to Gillett. Consequently, conclusions of Kohler and Bowers to the effect that Barber had committed a crime, communicated to Kaiserski through Bowers, were relevant.

Although Barber characterizes the court's ruling in limine as a blanket prohibition against testimony concerning opinions, events at trial, as well as the hearing on the motion, show this is not the case. During Kohler's testimony, Barber objected that he should not be allowed to give an opinion interpreting the campaign disclosure laws. The court stated it would allow that opinion testimony with an instruction to the jury as to what an opinion was. By allowing the testimony, the court recognized the distinction between the type of opinion testimony elicited by the question and the type of opinion it had prohibited prior to trial. To the extent that this trial ruling related to the motion in limine, it clarified that the court's ruling on the motion pertained only to testimony expressing an opinion as to whether Barber committed a crime. Further, the court's order on a motion in limine may be modified during trial. *State v. Johnston*, 249 Ga. 413, 415 (291 SE2d 543) (1982). See *Stephan v. State*, 205 Ga. App. 241, 242 (1) (422 SE2d 25) (1992); *Frink v. State*, 177 Ga. App. 604, 607 (1) (340 SE2d 631) (1986). If Barber did believe the motion in limine had been granted as to any opinion testimony (even though such a broad ruling had not been requested), he should have recognized that it had

been modified. At other points in the trial the court repeated its comments about opinion testimony that fell outside the parameters of the pretrial ruling.

The instances Barber cites do not express opinion that Barber committed the crime alleged or violate the court's order. The testimony was that the matter was important, that nothing occurred in the investigation to cause one to believe it was misdirected, that Barber had not given a satisfactory explanation for the allegations, and that Kohler believed Barber was not honest. The testimony also related what evidence against Barber had been brought to Bowers' attention. This testimony did not express an opinion Barber had committed a crime.

Barber also complains about testimony to the effect that Kohler believed there was sufficient evidence to take to the grand jury and believed, but did not know, that a grand jury would indict Barber, that it would have been unfair to pursue indictment against Hudson and Lockwood for approaching Barber when he was allowed to resign rather than face indictment, and that Bowers believed a case could be made against Barber but "if we were successful in getting an indictment and successful in getting a trial," a conviction would probably not result in punishment greater than removal from office. Again the testimony does not violate the order; the witnesses do not contend Barber committed a crime, expressed as either fact or opinion. Nor is Bowers' testimony about removal from office a statement that conviction *would* have resulted from prosecution but rather a prediction about what penalty would result *if* a conviction resulted.

At most these are statements evaluating the evidence against Barber. Such testimony was relevant because Gillett raised the defense that the broadcast was true, including its statement that Barber was forced to resign. Barber contended he resigned by choice. Kohler's and Bower's testimony that they had offered Barber the opportunity to resign rather than present the case to a grand jury, and the reason they decided to make that offer, conflicted with Barber's testimony and created an issue of fact. Their impressions as to the strength of the case against Barber, and their conclusions about the possible outcome of any prosecution based on that case, were admissible to explain their conduct. *Carco Supply Co. v. Dick Clem &c., Inc.*, 194 Ga. App. 566, 567 (2) (391 SE2d 134) (1990). The same is true of questions concerning Kohler's and Bowers' understanding of the law concerning bribery. Moreover, when objections to "opinion" evidence were raised, the court repeated, in the jury's presence, that no opinion as to whether a violation had occurred could be stated and that opinions were not facts. Appellant has not shown harmful error requiring reversal. *Verde v. Granary Enterprises*, 178 Ga. App. 773, 774 (2) (345 SE2d 56) (1986).

2. In his second enumeration, Barber contends the court should have sustained his objection to questions concerning indictments against Hudson and Lockwood for their actions concerning Commissioners Pafford and Lovett. After the objection had been overruled, Kohler testified that both Hudson and Lockwood were indicted for their actions concerning the other commissioners and that Hudson pled nolo contendere and received a fine, and that the charges against Lockwood were dropped. Kohler explained that prosecution did not continue against the two men based upon their interactions with Barber because "it would not be right" to do so when Barber had been allowed to resign rather than face prosecution for his involvement in the same acts.

Questions about the prosecution of Hudson and Lockwood had been addressed to a prior witness. At that time the only objection Barber raised was that the question might mislead the jurors to believe the investigation continued as to Barber's interactions with Hudson and Lockwood. Examination proceeded without further objection after Gillett rephrased the questions to refer only to prosecution for interactions Hudson and Lockwood had with Commissioners Pafford and Lovett.

Barber contends the evidence elicited by the questioning of Kohler was irrelevant because Barber was not one of the actors in the other transactions. He cites authority for the proposition that evidence of similar acts on occasions other than the one at issue in a trial is inadmissible to show conduct on the occasion in question, but that authority pertains to prior acts or relationships of a party. See OCGA § 24-2-2; *Dennis v. Dennis*, 227 Ga. 164, 166 (3) (b) (179 SE2d 238) (1971); *Carsten v. Wilkes Supermarket &c.*, 181 Ga. App. 834, 835-836 (2) (353 SE2d 922) (1987); *Genins v. Geiger*, 144 Ga. App. 244, 248 (6) (240 SE2d 745) (1977); *Hollomon v. Hopson*, 45 Ga. App. 762, 765 (8) (166 SE 45) (1932). The principle does not apply to non-parties. *Brannen v. Prince*, 204 Ga. App. 866, 870 (5) (421 SE2d 76) (1992).

The actions of non-parties Hudson and Lockwood pertaining to Commissioners Pafford and Lovett did not directly involve Barber but were nonetheless relevant to issues at trial. As noted above, Barber had to prove that Gillett made the broadcast with knowledge that its innuendo that Barber had committed bribery was false, or at least with reckless disregard as to whether it was false. *Perdue*, supra at 288. Gillett asserted as defenses that the innuendo was true and that it reasonably believed the innuendo to be true. The fact that, immediately after discussing commission review of an administrative hearing officer's decision, Hudson and Lockwood had given a cash campaign contribution to Barber and shortly thereafter attempted to do the same with two other commissioners, and were prosecuted for

their actions towards those commissioners, was relevant to issues of the truth of the implication and whether the reporter preparing the broadcast reasonably believed it to be true.

Even if the "other transactions" rule of OCGA § 24-2-2 applies to the actions of non-parties Hudson and Lockwood, evidence of their transactions with Pafford and Lovett was admissible to show their intent and motive in approaching commissioners. See *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 169 (3) (419 SE2d 69) (1992). Contrary to the characterization in Barber's brief, the actions of Hudson and Lockwood in approaching Commissioners Pafford and Lovett were not isolated from their acts in approaching Barber; it is inferable that all were part of a single course of action by Hudson and Lockwood, with a single aim. Evidence as to the results of the investigation into their dealings with Pafford and Lovett were relevant to issues tried and was properly admitted.

3. Finally, Barber contends the court erred in failing to give his Request to Charge No. 5: "If statements are broadcast implying the commission of a crime when there has been no indictment or conviction of the person so accused, this may constitute evidence of actual malice if the broadcaster knew of these facts." Barber cited *Barber v. Perdue*, supra, as authority. In that case the alleged defamation involved a letter in which the defendant stated this same plaintiff had accepted "what amounted to a bribe" and resigned "rather than face the prospect of indictment and conviction." Id. at 287. *Perdue* did note that the defendant knew the plaintiff had not been indicted or convicted of bribery, and that such knowledge could assist a jury in inferring the defendant was stating a falsity (i.e., that the plaintiff's acceptance of a bribe had been proven beyond a reasonable doubt in court) when he knew no court proceeding had ever occurred. The jury could draw similar inferences from the fact that the defendant wrote as though conviction was a certainty when he knew there was evidence against conviction. Id. at 291.

*Perdue* was decided in the context of summary judgment. The statement in the requested charge was taken out of context from the case claimed as authority. See *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 182 (2) (b) (441 SE2d 453) (1994). Furthermore, "[a] party is not entitled to have all of his requested charges given so long as the principle encompassed in the requested charge is covered elsewhere in the court's charge. [Cit.]" *Gen. Accident Ins. Co. v. Straws*, 220 Ga. App. 496, 498 (472 SE2d 312) (1996). A charge need not be given if it is argumentative or arguably invades the jury's province in directing a finding of fact. *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 448 (3) (451 SE2d 87) (1994). As the court properly noted during the charge conference, the requested charge would have the effect of the court pointing to one factual issue and stating that

malice could be found therefrom, emphasizing it over all other evidence. The principles of malice and the relevant burdens of proof which the jury had to consider were properly charged, and Barber was free to argue the evidence showed malice.

### Case No. A96A1078

4. In view of our decision in Case No. A96A1077, Gillett's cross-appeal is moot and must be dismissed.

*Judgment affirmed in Case No. A96A1077. Appeal dismissed in Case No. A96A1078. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED DECEMBER 5, 1996 — 

*Mayer & Beal, Randolph A. Mayer, Elizabeth B. Thompson, Cook & Connelly, Bobby Lee Cook,* for appellant.

*Alston & Bird, Judson Graves, Daniel A. Kent, Cynthia L. Counts,* for appellee.