## A00A0660. ARRINGTON v. THE STATE.
### (535 SE2d 337)

PHIPPS, Judge.

Douglas Arrington was tried in September 1998 for a crime that had occurred five months earlier. Following denial of his motion for new trial, he appeals his conviction of robbery by intimidation. He complains of evidentiary rulings by the trial court, including its admission of a witness's in-court identification of him even though the witness's pre-trial identification was suppressed. We find no reversible error and affirm.

On April 12, 1998, Amanda Tailoon was working as a waitress at a Waffle House restaurant in Lawrenceville. Her boyfriend, Michael Becker, was there with her. Tailoon testified that at approximately 4:00 a.m., she saw Arrington standing outside of the restaurant at a pay phone. According to Tailoon, Arrington remained in a well-lit area for about seven to eight minutes, and she had an unobstructed view of him. Tailoon further testified that at approximately 6:00 a.m., Arrington returned to the restaurant and sat down at the counter. Arrington began to converse with Becker, then abruptly stood up and put his right arm behind his back underneath his jacket. Becker backed away from Arrington, approached Tailoon, and told her that she needed to go to the register. Tailoon did so, because she realized that a robbery was underway. Arrington stood two to three feet in front of Tailoon and threatened her unless she gave him all the $20 bills in the register. She did as instructed. Arrington then fled on foot toward a nearby muddy area, and the police were summoned. Tailoon and Becker described the robber as a six-foot-tall black male weighing about 200 pounds, with short hair, wearing blue jeans and a white shirt.

City of Lawrenceville Police Officer Eberhardt testified that after police were alerted to the robbery and given a description of the suspect, he observed Arrington proceeding on foot at a rapid pace in front of police headquarters. Because Arrington fit the suspect's description, Eberhardt instructed him to stop. As Arrington stopped, he bent down and did something with his sock. The officer observed that Arrington was sweating profusely even though the temperature was 40°F and that his boots were wet and muddy, as were his pants legs from the knees down. After Arrington was arrested and told to remove his socks, $400 in $20 bills were found inside one of them. Photographs of footprints left in the muddy area near the Waffle

House matched the boots worn by Arrington at the time of his arrest.

Tailoon viewed Arrington at a one-on-one showup. She testified that no suggestive comments were made and that she positively identified Arrington as the robber based on a combination of his physical appearance and the sound of his voice. She also positively identified him at trial.

Becker also viewed Arrington at a one-on-one showup. He testified that he had a clear view of the robber during the three to four minutes the robbery was in progress. Becker was not, however, able to positively identify Arrington during the showup. Shortly after the robbery, police had apprehended another suspect. Becker was shown the second suspect but excluded him as the robber. Becker then viewed Arrington at a second showup. At some point, police informed Becker that the first suspect had been found in possession of money close to the amount taken from the Waffle House and had mud on his shoes and pants legs. Upon viewing Arrington the second time, Becker positively identified him as the robber based on his appearance and the sound of his voice.

Arrington moved to suppress any identification of him by Tailoon or Becker, arguing that a one-on-one showup is impermissibly suggestive. Finding that the showup was impermissibly suggestive to Becker but not to Tailoon, the trial court granted Arrington's motion to suppress Becker's identification testimony but denied his motion to suppress Tailoon's. At the beginning of the trial, however, the court ruled that it had not suppressed any in-court identification of Arrington by Becker. Defense counsel then announced that she would submit evidence of Becker's pre-trial identification in order to show that his in-court identification had been tainted.

1. Arrington first contends that the court erred in allowing Becker to identify him in court.

Notwithstanding any taint occurring in the pre-trial identification of the defendant, a witness's in-court identification may still be admitted provided it has an "independent origin."[1] The test

> is[ ] "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by

---

[1] *Brown v. State*, 192 Ga. App. 187, 188 (1) (384 SE2d 254) (1989).

the witness at the confrontation, and (5) the length of time between the crime and the confrontation." [Cit.][2]

Even if the trial court erred in determining that Becker's in-court identification of Arrington did not depend on the prior tainted identification, we do not find the error reversible. In light of Tailoon's positive pre-trial and in-court identifications of Arrington and the compelling physical evidence tying him to the crime, we conclude that any error by the trial court in allowing Becker to provide an in-court identification would have been harmless beyond a reasonable doubt.[3]

2. Arrington next complains of the trial court's refusal to allow defense counsel to read to the jury a certified copy of Becker's indictment for first degree forgery, which together with his conviction, was admitted for impeachment purposes.

Defense counsel tendered these documents in evidence and announced her intent to read the indictment. The court ruled that the jurors would have an opportunity to peruse the documents and that counsel could comment on them during closing argument, but that she should not read them to the jury. Because defense counsel did not object to this ruling, the issue has been waived.[4]

Moreover, Arrington's argument is that this procedure was unfair because the court allowed the prosecuting attorney to publish evidence to the jury during the trial. In support of this argument, however, Arrington cites to parts of the trial transcript in which a State's witness displayed photographic evidence to the jury at the request of defense counsel during cross-examination.

3. Finally, Arrington contends that the court erred in allowing the State to admit the testimony of a rebuttal witness who was not on the State's witness list.

Because Arrington did not object to introduction of the witness's testimony on this ground at trial, this issue has been waived.[5]

*Judgment affirmed. Johnson, C. J., and Mikell, J., concur.*

DECIDED JUNE 8, 2000 —
RECONSIDERATION DISMISSED JUNE 29, 2000.

*Sharon L. Hopkins*, for appellant.
Douglas Arrington, *pro se.*

---

[2] *Smith v. State*, 160 Ga. App. 60 (1) (286 SE2d 45) (1981).

[3] See *Huff v. State*, 239 Ga. App. 83, 86 (1) (519 SE2d 263) (1999).

[4] *White v. State*, 255 Ga. 210, 213 (3) (336 SE2d 777) (1985).

[5] Id.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.